## COSGROVE *v.* WINNEY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 172. Submitted January 19, 1899. — Decided April 24, 1899.

The appellant, a Canadian, was extradited from Canada under the extradition treaty between Great Britain and the United States, and, being brought before a police court of Detroit was charged with larceny, gave bail for his appearance at the trial, and returned to Canada. Returning from Canada to Detroit voluntarily before the time fixed for trial, he was arrested on a capias issued from the District Court of the United States for the Eastern District of Michigan before his extradition, charging him with an offence for which he was not extraditable, and was taken into custody by the marshal of that district. He applied to the District Court of the United States for a writ of *habeas corpus* which

was allowed. After hearing and argument his application for a discharge was refused by the District Court. On appeal to this court it is *Held:* That under the circumstances the appellant retained the right to have the offence for which he was extradited disposed of, and then to depart in peace, and that this arrest was in abuse of the high process under which he was originally brought into the United States, and cannot be sustained.

NOVEMBER 7, 1895, Winney, United States marshal for the Eastern District of Michigan, made a complaint before one of the police justices of the city of Detroit within that district against Thomas Cosgrove for the larceny of a boat, named the Aurora, her tackle, etc., whereon a warrant issued for his arrest. Cosgrove was a resident of Sarnia, in the Province of Ontario, Dominion of Canada, and extradition proceedings were had in accordance with the treaty between the United States and Great Britain, which resulted in a requisition on the Canadian Government, which was duly honored, and a surrendering warrant issued May 19, 1896, on which Cosgrove was brought to Detroit to respond to the charge aforesaid; was examined in the police court of Detroit; was bound over to the July term, 1896, of the recorder's court of that city; and was by that court held for trial, and furnished bail. He thereupon went to Canada, but came back to Detroit in December, 1896.

December 3, 1895, a capias issued out of the District Court of the United States for the Eastern District of Michigan, on an indictment against Cosgrove, on the charge of obstructing the United States marshal in the execution of a writ of attachment, which was not served until December 10, 1896, some months after Cosgrove had been admitted to bail in the recorder's court.

Cosgrove having been taken into custody by the marshal applied to the District Court for a writ of *habeas corpus*, which was issued, the marshal made return, and the cause was duly argued.

The court entered a final order denying the application and remanding the petitioner. From this order an appeal was taken to the Circuit Court of Appeals, and there dismissed,

whereupon an appeal to this court was allowed, and Cosgrove discharged on his own recognizance.

The district judge stated in his opinion that it appeared "that the property, for the taking of which he [Cosgrove] is charged with larceny, was the vessel which, under the indictment in this court, he was charged with having unlawfully taken from the custody of the United States marshal, while the same was held under a writ of attachment issued from the District Court in admiralty."

And further: "The only question which arises under this treaty therefore is whether upon the facts stated in the return which was not traversed, the petitioner has had the opportunity secured him by that treaty to return to his own country. If he has had such opportunity, then article 3 has not been violated, either in its letter or spirit, by the arrest and detention of the petitioner. It is conceded that he was delivered to the authorities of the State of Michigan in May, 1896, to stand his trial upon the charge of larceny. He gave bail to appear for trial in the recorder's court when required and immediately returned to Canada. On December 10, 1896, he voluntarily appeared in the State of Michigan, of his own motion, and not upon the order of the recorder's court, or at the instance of his bail, and while in this district was arrested."

*Mr. E. H. Sellers* and *Mr. Cassius Hollenbeck* for appellant.

*Mr. Solicitor General* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Article three of the Extradition Convention between the United States and Great Britain, promulgated March 25, 1890, 26 Stat. 1508, and section 5275 of the Revised Statutes, are as follows:

"Article III. No person surrendered by or to either of the High Contracting Parties shall be triable or be tried for any crime or offence, committed prior to his extradition, other

than the offence for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered."

"SEC. 5275. Whenever any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any crime of which he is duly accused, the President shall have power to take all necessary measures for the transportation and safekeeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the crimes or offences specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such crimes or offences, and for a reasonable time thereafter, and may employ such portion of the land and naval forces of the United States, or of the militia thereof, as may be necessary for the safekeeping and protection of the accused."

Cosgrove was extradited under the treaty, and entitled to all the immunities accorded to a person so situated; and it is admitted that the offence for which he was indicted in the District Court was committed prior to his extradition, and was not extraditable. But it is insisted that although he could not be extradited for one offence and tried for another, without being afforded the opportunity to return to Canada, yet as, after he had given bail, he did so return, his subsequent presence in the United States was voluntary and not enforced, and therefore he had lost the protection of the treaty and rendered himself subject to arrest on the capias and to trial in the District Court for an offence other than that on which he was surrendered; and this although the prosecution in the state court was still pending and undetermined, and Cosgrove had not been released or discharged therefrom.

Conceding that if Cosgrove had remained in the State of Michigan and within reach of his bail, he would have been exempt, the argument is that, as he did not continuously so remain, and, during his absence in Canada, his sureties could not have followed him there and compelled his return, if his appearance happened to be required according to the exigency

of the bond, which the facts stated show that it was not, it follows that when he actually did come back to Michigan he had lost his exemption.

But we cannot concur in this view. The treaty and statute secured to Cosgrove a reasonable time to return to the country from which he was surrendered, after his discharge from custody or imprisonment for or on account of the offence for which he had been extradited, and at the time of this arrest he had not been so discharged by reason of acquittal; or conviction and compliance with sentence; or the termination of the state prosecution in any way. *United States* v. *Rauscher*, 119 U. S. 407, 433.

The mere fact that he went to Canada did not in itself put an end to the prosecution or to the custody in which he was held by his bail, or even authorize the bail to be forfeited, and when he reëntered Michigan he was as much subject to the compulsion of his sureties as if he had not been absent.

In *Taylor* v. *Taintor*, 16 Wall. 366, 371, Mr. Justice Swayne, speaking for the court, said: "When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern, 231, it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same. They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee."

We think the conclusion cannot be maintained on this record that, because of Cosgrove's temporary absence, he had waived or lost an exemption which protected him while he was subject to the state authorities to answer for the offence for which he had been extradited.

The case is a peculiar one. The marshal initiated the prosecution in the state courts, and some weeks thereafter the indictment was found in the District Court for the same act on which the charge in the state courts was based. The offences, indeed, were different, and different penalties were attached to them. But it is immaterial that Cosgrove might have been liable to be prosecuted for both, as that is not the question here, which is whether he could be arrested on process from the District Court before the prior proceeding had terminated and he had had opportunity to return to the country from which he had been taken. Or, rather, whether the fact of his going to Canada pending the state proceedings deprived him of the immunity he possessed by reason of his extradition so that he could not claim it though the jurisdiction of the state courts had not been exhausted; he had come back to Michigan; and he had had no opportunity to return to Canada after final discharge from the state prosecution.

We are of opinion that, under the circumstances, Cosgrove retained the right to have the offence for which he was extradited disposed of and then to depart in peace, and that this arrest was in abuse of the high process under which he was originally brought into the United States, and cannot be sustained.

*Final order reversed and cause remanded with a direction to discharge petitioner.*