## FIELD et al. v. UNITED STATES.

United States Court of Appeals
Second Circuit.
July 25, 1951.

Victor Rabinowitz, New York City, and Mary M. Kaufman, New York City, for appellants.

Philip B. Perlman, Sol. Gen., Oscar H. Davis, Asst. to the Sol. Gen. Washington, D. C., for the U. S.

Opinion by Mr. Justice REED, as Acting Circuit Justice for the Second Circuit.

An application by the three above-named movants has been presented to me, Acting Circuit Justice of the United States Court of Appeals for the Second Circuit by designation of the Chief Justice of the United States. The application is for the enlargement of movants on bail pending their appeal to the Court of Appeals for the Second Circuit from judgments of conviction against each of them for contempt of court by the United States District Court for the Southern District of New York. Movant Field on July 5, 1951, was sentenced to ninety days. Movants Hunton and Hammett on July 9 were sentenced to six months. Each was given the privilege to purge himself of his contempt. Application is made under Rule 46(a) (2) of the Rules of Criminal Procedure for the District Courts of the United States, 18 U.S.C.A. Bail has been refused in the respective cases by the trial judge and by a circuit judge. A single application was filed with me by the three movants and the three motions can be conveniently considered together as no differences between the parties affecting the conclusion on the application appear.

A single informal and incomplete record is before me consisting of the application for bail and an uncertified copy of the stenographer's minutes at the hearings of July 2, 3, 5 and 6, 1951, resulting in the convictions for contempt, an attested copy of the judgment and commitment of Frederick V. Field, copies of the opinions of Chief Judge Swan and Circuit Judge Hand, copies of the required certificates under Rule 42(a), Rules of Criminal Procedure, and memoranda of argument by counsel. None of the exhibits concerning the hearing were offered by movants. The same counsel advised all three movants at the hearing, by permission of the trial judge, though the counsel were not permitted to object to the questions asked the three movants as witnesses. Counsel advised the witnesses and urged grounds against their conviction for contempt. Such a record, neither party objecting, seems adequate to dispose of the application for bail.

The convictions for contempt followed from these happenings. The three movants were trustees of the Bail Fund of the Civil Rights Congress of New York, together with two other parties, not before me. The Bail Fund was a formalized trust; a copy of the trust agreement was on file in the District Court as a part of the record in United States v. Dennis et al., 2 Cir., 183 F.2d 201, affirmed sub. nom., Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. The agreement was used in this hearing. It had officers authorized to act in a fiscal capacity—a treasurer, a secretary and an assistant treasurer. The Bail Fund received loans from several hundred or thousand individuals, according to Mr. Field's testimony, since 1946, and on December 31, 1950, had investments of "$712,000 in securities of the United States." For these loans or contributions, certificates of deposit were issued. A record of these was kept among the records of the Bail Fund. A witness, Mr. Abner Green, a trustee, and a movant, Mr. Field, testified to the recent existence of trust records, as well as an accountant.

In the absence of a full record with exhibits, I shall accept the statement of an attorney for movants appearing in movants' transcript "that the trustees of the Bail Fund * * * have got complete authorization and power to post bonds in cases involving civil rights with funds which are given to them expressly for the purpose of posting such bonds; that the authority to post such bonds is vested solely in the trustees and that persons who lend money to the trustees have no authority or no control or no interest in the determination of that party for whom the bonds are posted." The record clearly supports this statement.

Pursuant to the purposes of the trust, the Bail Fund posted $260,000 bail in the Dennis case. On arrival of the mandate

of the Supreme Court of the United States affirming the convictions of Dennis et als., the District Court undertook to commit the defendants to serve their sentences. Four did not appear and have not been found. Bench warrants issued for them have not been served. Their bonds of $80,000 have been forfeited.

The District Court requested the presence of the movants, trustees of the Bail Fund. Although subpoenas were issued for their appearance, they appeared in court without service and were sworn as witnesses in a hearing in the case of United States v. Dennis, to assist the court in effecting service of its process to commit the four nonappearing defendants. Their apprehension was sought to complete the judgment by confinement for the term imposed. The court stated that the nonappearance impeded "the orderly administration of justice"; that it wished to know if anyone was assisting in their evasion of process. The movants, the trustees, appeared as witnesses, not parties. During the course of their examination as witnesses in the endeavor to locate the absent defendants, the movants refused to answer certain questions and to produce the records of the Bail Fund of which they were trustees. Thereupon the court proceeded summarily to adjudge them in criminal contempt under Rule 42(a), Rules of Criminal Procedure, and certified he saw and heard the contumacious conduct.

The judgments for contempt involved in this appeal have nothing to do with any charge against movants of unlawfully harboring or concealing the four defendants in the Dennis case. These movants are charged with no unlawful act except contempt of court in their refusal to answer questions and submit books of the Bail Fund within their control.

Without setting out at length the testimony of the movants, I think it sufficient to say that the court sought to have brought before it by the witnesses the records of the Bail Fund, particularly the certificates of deposit issued to those who furnished money or bonds for the Fund, so that the names of the contributors would be available to the court. For example, the interrogation of the witness and movant, Mr. Field, shows the testimony set out in the margin.[1] Mr. Field also testified that the records of the Bail Fund were exclusively in the custody of the trustees. He declined to produce the list under a claim of privilege against self-incrimination.

The testimony of Mr. Field is explicit upon the issue as to whether the records of the Bail Fund were personal property of the individuals who were trustees or of the Fund. The records, he said, were held only by them as trustees and if the trustees were to change, the books and records would be surrendered. Another witness, Mr. Green, testified on examination as to control of the records of the Fund. "Q. And you likewise maintain absolute control and domination over the affairs of the fund in respect to maintenance of its books and records and the files, do you not? A. As a board of trustees we do, yes."

There was no denial of such custody of the records by any witness. Mr. Hunton declined to comply with the court's direction to produce the records on the ground that "I do not have custody or possession of any of the documents you have enumerated." That is, the records. He was not pressed further. Mr. Hammett, in reply to a direction to produce the records, answered: "Without conceding that I have the ability to or can produce such documents, I must decline to produce them."

The movants answered questions as to some matters in regard to the absent defendants in the Dennis case but refused many on the ground of possible self-incrimination. As the existence, character,

---

1. "Q. Does this bail fund, of which you have been trustee, issue certificates of deposit? A. Yes, your Honor.

"Q. To those who have deposited bonds? A. Yes.

"Q. And is a record kept of those certificates, to whom they are issued, and the date? A. That's right, your Honor.

"Q. Where is such record? A. In view of the fact, your Honor, that that question pertains to the identity of individual lenders, I decline to answer on the ground that the reply might tend to incriminate me, and I do so under the Fifth Amendment."

and production of the Bail Fund records and whether the books sought were maintained under the trustees' control in their representative capacity as trustees of the Bail Fund were the principal issues, it seems unnecessary further to specify the testimony of these movants.

■ Two procedural objections to the convictions may first be noted and passed upon. In the conviction of Mr. Field, it is argued the order was not made in conformity with Rule 42(a) of the Rules of Criminal Procedure. The rule requires that the order of contempt "recite the facts and shall be signed by the judge and entered of record." On July 5, 1951, this certificate was not available and the appeal was taken before the certificate was signed. It is argued that the subsequent entry and certification of the certificate could not cure the defect. The Chief Judge looked upon this as a nonprejudicial error at most, as it would merely require a remand and resentence. I agree. Furthermore, counsel for Mr. Field on July 9 moved to set aside Mr. Field's commitment for failure to file the certificate. The trial judge offered to resentence Mr. Field and the motion was withdrawn. This removes this technicality from the need of further consideration.

A second procedural objection is basic to all the convictions. It is movants' contention that the entire hearing is a nullity because beyond the judicial power, the jurisdiction, of the trial court. The point made by movants is that the execution of the bench warrants of the trial court on the four defendants in the Dennis case is an executive function of the marshal or the Federal Bureau of Investigation, that any inquiry as to the reasons for failure to execute the warrants must be by the grand jury, the investigatory body in the judicial branch of our government.

■ District Courts of the United States have jurisdiction of all offenses against the laws of the United States. 18 U.S.C. § 3231. They "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment is satisfied." Wayman v. Southard, 10 Wheat. 1, 23, 6 L.Ed. 253. Under ancient practice bench warrants are issued on indictments to bring defendants before the court for trial, and after violation of bail, either before or after conviction, warrants issue in order that a judgment may be executed. There can be no doubt of the power of the court to direct the bench warrant for the arrest of the four fugitives from justice in the case of Dennis et als.

In the endeavor to execute the judgment of conviction, the District Court could bring before it as witnesses the trustees of the Bail Fund. They were, in truth, the jailers of the fugitives, responsible for their appearance.[2] As such they had a relation to the court that justified the court's requirement that they give evidence as witnesses in the proceedings to carry out the imprisonment of the Dennis defendants.[3] Those defendants came under control of the court at their original surrender. Although on bail they were under court control. The condition of the bond is the appearance of the principal in the court on demand. The bail may arrest the principal at any time. 18 U.S.C. § 3142.

2. Reese v. United States, 9 Wall. 13, 19 L.Ed. 541; Taylor v. Taintor, 16 Wall. 366, 21 L.Ed. 287; Cosgrove v. Winney, 174 U.S. 64, 19 S.Ct. 598, 43 L.Ed. 897; United States v. Lee, D.C., 170 F. 613; United States v. Ryder, 110 U.S. 729, 4 S.Ct. 196, 28 L.Ed. 308.

3. Cases cited by movants to support their theory that the sureties on bail have no responsibility beyond their bond are not contrary to the foregoing authorities.

In Leary v. United States, 224 U.S. 567, 32 S.Ct. 599, 56 L.Ed. 889, the issue was the right of a bondsman to intervene to secure adjudication of his rights as bondsman in a fund claimed by the United States. Nothing was said as to the relation of bondsman as jailer of the fugitive. Even the fact that a man may post cash bail, asserted by movants, 6 U.S.C. § 15, 6 U.S.C.A. § 15, is not an argument against a bailsman's powers and duties.

The District Court's power to protect the execution of its business from obstruction by a witness' refusal to answer inquiries is established. There is, of course, no doubt that the hearing was by the court. The witness may not take exception to the materiality of the questions, Nelson v. United States, 201 U.S. 92, 114, 26 S.Ct. 358, 50 L.Ed. 673, or as to whether the court has jurisdiction over the subject matter of the inquiry or the constitutionality of the statute under consideration. Objections as to the proceedings are for the parties thereto. It is enough if the court has a *de facto* existence and organization.[4] The interference with carrying on the court's business in the presence of the court furnishes the reason for the use of the contempt power.[5] These witnesses, movants now, were summonsed or appeared in the final proceedings of the Dennis case and were asked to testify to assist the court in carrying out its judicial duty of committing the defendants to imprisonment. The court had not resolved itself into a court of inquiry to determine whether a crime had been committed or to get evidence to initiate a prosecution, such as was true in In re Pacific Telephone & Telegraph Co., D.C., 38 F.2d 833, or Ketcham v. Commonwealth, 204 Ky. 168, 263 S.W. 725. This was a proceeding to complete the Dennis case. Subject to their privileges as witnesses, they were compellable to attend and testify. None are exempt. Rule 17, Rules of Criminal Procedure. Distance or occupation does not excuse witnesses in criminal cases. A witness cannot trifle with the court or make its "processes a mockery." Clark v. United States, 289 U.S. 1, 12, 53 S.Ct. 465, 468, 77 L.Ed. 993.

We need not analyze the privilege claimed by Hunton or Hammett concerning their relations with the absent defendants. Whether Field or Hunton waived privilege by some of their testimony does not affect the principal issue in these convictions—the right of the trustees of the Bail Fund to refuse to produce its records. As shown by the testimony of Field and Green, supra, these records were held by the Board of Trustees as the property of the Board, not as the records of the appellants in their individual capacity. In such circumstances the fact that title to the property and records of the trust is in the trustees is immaterial. We have recently held as much in United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542, where the books of a labor union were refused to the court by their custodian on the ground of self-incrimination. On the custodian's conviction for contempt, we upheld the conviction saying, as to representatives of a collective group, "And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally." This is a fixed rule. See Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771.

Here the recalcitrant trustees, when on the stand, although the evidence was clear as to their control of the records, declined to produce the records on a claim of privilege, a claim of lack of power or, in the case of Mr. Hammett, by a simple refusal.

I have no doubt that such refusal was contemptuous and that their conviction was proper. Consequently I must deny their applications for bail pending appeal.

4. Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979. See United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319; United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884.

5. Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656; United States v. Appel, D.C., 211 F. 495; Clark v. United States, 289 U.S. 1, 11, et seq., 53 S.Ct. 465, 77 L.Ed. 993. Cf. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389.