## UNITED STATES v. HALL.

United States District Court
S. D. New York.

Dec. 19, 1951.

Myles J. Lane, U. S. Atty., S. D. N. Y., New York City, Roy M. Cohn, James B. Kilsheimer, III, and Albert A. Blinder, Asst. U. S. Attys., New York City, of counsel, for petitioner.

Harry Sacher, New York City, for respondent.

RYAN, District Judge.

This proceeding to punish Gus Hall for contempt of court was commenced by the application of Myles J. Lane, United States Attorney for the Southern District of New York. Rule 42, Fed.Rules Crim.Proc. 18 U.S.C.A. An order was made, on October 31, 1951, citing the contemnor to show cause before this court on November 2, 1951 why he "the said Gus Hall should not be adjudged and held in criminal contempt of Court and punished for said criminal contempt of this Court by reason of the fact that he disobeyed and resisted lawful orders and commands of this Court directing him to appear before it on July 2, 1951, and July 3, 1951; requiring him to surrender himself in execution of the judgment and sentence imposed under Indictment C 128–87, upon such day as the District Court may direct; and requiring him to remain within the jurisdiction of the District Court of the United States for the Southern District of New York, or the District Court

of the United States for the Northern District of Ohio."

Service of this order and of the affidavit of the United States Attorney upon which' it was based was duly made upon the contemnor. The contemnor, represented by counsel, appeared on the return day at the bar of this court and the matter was adjourned for trial. Thereafter and on November 19, 1951, the United States Attorney served upon the contemnor and his attorney specifications of the criminal contempts charged. It was set forth in these specifications that,

"The United States of America, for its specifications of criminal contempt, alleges that the contemnor, Gus Hall, has committed criminal contempt in this Court by wilfully and knowingly disobeying and resisting the following orders, decrees and commands of this Court:

"1. Order of Honorable William Bondy, United States District Judge, dated November 10, 1949; ·

"2. Order of Honorable Sylvester J. Ryan, United States District Judge, dated April 2, 1951;

"3. Order of Honorable Sylvester J. Ryan, United States District Judge, dated July 2, 1951.

"The United States of America further alleges that said contemnor, Gus Hall, committed criminal contempt of this Court by reason of the following:

"A. The contemnor disobeyed and resisted the orders of this court, listed as numbers 1 and 2, supra, by being without the jurisdiction of the districts specified in said orders.

"B. The contemnor disobeyed and resisted the order listed as number 3, supra, by failing to appear before this Court on July 2, 1951, by failing to surrender on said date, or at any other time prior to his apprehension at Laredo, Texas, on October 10, 1951."

Copies of the orders which it was charged contemnor disobeyed and resisted were annexed to the specifications.

The contemnor was duly arraigned on November 21, 1951 and entered a plea of not guilty to each of the contempts charged.

Trial was then had to the court without a jury. Rule 42(b), Fed.R.Crim.P.; United States v. United Mine Workers of America, 330 U.S. 258, 298, 67 S.Ct. 677, 91 L.Ed. 884.

At the outset of the trial contemnor moved to dismiss the charge of contempt based on the order of the Honorable Sylvester J. Ryan, dated April 2, 1951. The United States Attorney consenting, this charge of contempt was dismissed. The trial continued as to the other two specifications numbered 1 and 3—contempt of the order of Bondy, J., of November 10, 1949 and contempt of the order of Ryan, J., of July 2, 1951.

We turn, first, to examine the record of the prior proceedings which gave rise to the making of these two orders. ·

.The contemnor and eleven codefendants were indicted by the Grand Jury impaneled for the Southern District of New York on July 20, 1948, charged with violation of Section 3 of the "Smith Act", Sec. 11, 18 U.S.C.A. 1946 ed., 1948 Revised Criminal Code, 18 U.S.C.A. § 2385. Following a plea of not guilty, the defendants were released on $5,000 bail; contemnor and ten of his codefendants were later tried and convicted by verdict of a jury. The contemnor, on October 21, 1949, was sentenced to a term of imprisonment of five years and fined in the sum of $10,000, and remanded to commence service of the term so imposed.

An appeal was taken from the judgment of conviction by these defendants, including the contemnor, to the Court of Appeals for the Second Circuit. On an application for bail, the Government conceded that the appeal presented a substantial question, and on November 2, 1949 the Court of Appeals allowed bail. The contemnor and his codefendants were enlarged upon bond in the sum of $20,000 posted by each of them on November 3, 1949.

The contemnor signed and acknowledged his bond; he personally subscribed to the conditions of the recognizance. These conditions, in part, provided that the contemnor " * * * shall abide by and obey all orders made in said cause and shall surrender himself in execution of the judg-

ment and sentence appealed from upon such day as the District Court of the United States for the Southern District of New York may direct, if the judgment and sentence appealed from shall be affirmed * * *."

The bond further provided that the contemnor "* * * shall not depart the jurisdiction of the District Court of the United States for the Southern District of New York without leave * * *."

The contemnor later, on November 4, 1949, swore to an affidavit which stated that he resided at 1708 West 31st Place, Cleveland, Ohio, and that he was "desirous of departing from the Southern District of New York to his place of residence to be with his family and to take care of his affairs." This affidavit was submitted to the court on an application made by the contemnor to enlarge the conditions of his bail so as to permit him to journey to and temporarily stay in the federal district in which was located his home. It was on this application that, on November 10, 1949, Judge Bondy made the order upon which Specification of Contempt No. 1 is predicated.

The convictions were affirmed by the Court of Appeals on August 1, 1950, United States v. Dennis, 2 Cir., 183 F.2d 201. The "defendants expressed an intention to petition the Supreme Court to review their cases. The prosecution asked that bail be revoked and defendants remanded to jail. * * * The Court of Appeals did not summarily terminate bail but a majority of the judges extended it for thirty days, expressly to enable application to the Circuit Justice for further extension." Opinion of Jackson, C. J., Williamson v. United States of America, 2 Cir., 1950, 184 F.2d 280, 281. The Circuit Justice, on September 25, 1950, ordered that the bail posted by the contemnor and codefendants was to be "continued until the Supreme Court of the United States shall deny their petition for certiorari or, if it be granted, shall render judgment upon their cause."

Petition for certiorari was granted. 340 U.S. 863, 71 S.Ct. 91, 95 L.Ed. 630. The appeal was thereupon brought on for argu-

ment and on June 4, 1951, the conviction was affirmed by the Supreme Court. 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. At that time, the contemnor was at large on bail furnished on November 3, 1949.

With the arrival of the mandate of the Supreme Court affirming the conviction, this court (Ryan, J.) made the order of July 2, 1951, directing all the defendants including the contemnor to surrender to the United States Marshal for the Southern District of New York on the 2nd day of July, 1951, at 11:05 in the forenoon of that day. The contemnor did not then surrender nor did he at any time thereafter surrender or voluntarily make himself amenable to the process of this court. When the contemnor and three of his codefendants failed to appear on July 3, 1951, a warrant was issued for their arrest. The contemnor remained a fugitive until October 10, 1951 when he was located and arrested in Laredo, Texas. He was then imprisoned to serve the sentence which had previously been imposed upon him. The contemnor is still confined serving this sentence and was brought into court by his jailor to answer the charges of contempt now preferred against him.

Before the presentation of evidence, the contemnor also moved to dismiss the charge of contempt based on the order of Judge Bondy of November 10, 1949. It was urged in support of this motion that the order contained no express command to do or to refrain from doing anything. It was argued that it merely sets forth an enumeration of the conditions of contemnor's bail bond, violation of which would justify forfeiture of the bond.

The pertinent portions of Judge Bondy's order read:

"Ordered that each of said defendants-appellants, Gus Hall, Carl Winter, Gilbert Green, Robert G. Thompson and John Gates is hereby given permission to depart from the Southern District of New York upon the following express conditions and subjects in all other respects to the conditions of the bonds aforesaid: That he may depart from the Southern District of New York and go to the Federal District in

which his home is located to be with his family and attend to his affairs temporarily; that he will return to the Southern District of New York whenever ordered by this Court to do so; that in case he removes from his present home or changes his address, he shall forthwith inform the United States Attorney for the Southern District of New York to that effect; that Robert W. Dunn, who executed the bail bond for each of the defendants-appellants hereinabove named, shall give his written consent to the making and entry of this order; and that Robert W. Dunn, Frederick V. Field, Dashiell Hammett, W. Alphaeus Hunton and Abner Green, Trustees of the Bail Fund of the Civil Rights Congress of New York, shall give their written consent to the making and entry of this order, and it is further

"Ordered that for any violation of any of the conditions hereinabove named by any of said defendants-appellants the bond of such defendant-appellant shall be forfeited."

The language of the order is clear, concise and specific. It appears as the result of the draftsmanship of contemnor's own attorney; he was the author of the provisions of the order. A reading of the order leaves no doubt as to its purpose and no uncertainty as to its provisions. Moreover, the order must be read in the light of the proceedings in which it was made, for the contemnor was a party to those proceedings.

There was implicit in the order of the Court of Appeals allowing bail and directing contemnor's release upon the posting of bond and in the order of the Circuit Justice continuing the bond, a requirement that the defendant obey the terms of his bond—that he "abide by and obey all orders made in said cause," "surrender himself in execution of the judgment and sentence appealed from," and "not depart the jurisdiction" of the court. The provisions of the order of Judge Bondy were not only a recitation of the conditions of the bond, but were distinct and separate directions and express commands of what was implicit, but not formally expressed, in the orders allowing and continuing bail. To read the order of Judge Bondy otherwise than as direction to the contemnor is to place upon it a strained construction. The order contained a directive that the contemnor, while on bail, was not to leave the districts specified. This directive was not mere surplusage; it set forth an order which the contemnor was bound to obey.

The motion to dismiss the charge of contempt based on the order of November 10, 1949 is denied.

There appears to be no ground for dispute that the order of July 2, 1951 directing the surrender of the contemnor was properly made. That the contemnor by his failure to submit to the authority of the court was impeding the orderly administration of justice and the proper functioning of the court may not be questioned. The power of the court to make this order directing the surrender of the contemnor is clear. It was the means by which the judgment of conviction was to be put into execution. When the judgment was affirmed it became the duty of this court, in which the judgment of conviction was originally made, to see that it was enforced.

It has been held that this contemnor, as well as his codefendants, "came under control of the court at their original surrender. Although on bail they were under court control. The condition of the bond is the appearance of the principal in the court on demand." Opinion of Reed, C. J., as acting Circuit Justice for the Second Circuit, Field v. United States, 1951, 193 F.2d 86. The contemnor was bound in law to obey the order of July 2, 1951 and to surrender to serve his sentence.

We come now to a consideration of the evidence presented on the trial.

It was shown that a "farewell banquet" for the contemnor was held in Cleveland, Ohio, on June 24, 1951. A witness who had attended the function testified that the contemnor was present and that he had addressed the gathering and spoke of the fact that shortly he expected to be imprisoned in federal prison to serve the term which had been imposed following his conviction.

It was also established that a proposed order on mandate requiring the contemnor to surrender on July 2, 1951, was served upon the contemnor's attorney on June 28, 1951; and, that with the proposed order there was also served a notice of settlement, that it would be presented for signature by the court on July 2, 1951 at ten a. m. The testimony of the attorney who had received service of this proposed order on behalf of the contemnor was placed in the record by stipulation. He testified that on June 29, 1951 he told the contemnor in person that he, the contemnor, was required to be in this court on July 2, 1951 and that the contemnor had replied that he would be present as required.

The superintendent of an apartment house in Bronx County, N. Y., in which the contemnor was a tenant, testified that at about 7 o'clock on the morning of June 30, 1951 he observed the contemnor leaving the house; that the contemnor carried two suitcases, that he walked to a nearby parked automobile, put the suitcases in it and then returned to the house. The witness further testified that a few minutes later the contemnor again came out of the apartment house, that this time he was carrying some suits over his arm, that he entered the car and drove away. It was the testimony of this witness that the contemnor had light colored hair, a moustache and that he was very heavy.

There was no evidence presented to show the whereabouts of the contemnor from the morning of June 30, 1951 until he was taken into custody on October 10, 1951. He did not appear in court on July 2, 1951 to surrender and a warrant for his arrest was issued the next day. The Chief Deputy Marshal for this district testified that on July 2, 1951 he went to the address given by the contemnor as the place in New York where he could be located—45–18 42 Street, Long Island City, New York, N. Y.—but that, there, he was unable to locate the contemnor.

Various newspapers were offered and received in evidence. These newspapers contained reports of the making of the order of July 2, 1951 and of the subsequent issuance of a warrant for contemnor's arrest. The Government, we find, on review of the entire record, failed to show that these newspapers or the pertinent articles they contained came to the attention of the contemnor. The newspapers are, therefore, stricken from the record and have not been considered in arriving at our factual findings.

It was further testified by an agent of the Federal Bureau of Investigation that the contemnor was taken into custody on October 10, 1951 at Laredo, Texas. At the time, the contemnor weighed about twenty pounds less than he did on June 30, 1951; he had no moustache; his hair was dark brown.

The contemnor did not testify and he offered no witnesses to controvert the foregoing testimony. We have not considered the failure of the defendant to testify.

■ The burden is upon the Government to prove beyond a reasonable doubt the guilt of the defendant. We find that it has done so as to both charges of contempt.

That the contemnor had within him an intent to wilfully defeat the process of this court has been established. That it was his purpose not to serve the prison sentence which had been lawfully pronounced against him has been proved beyond all doubt. He knew that his conviction and sentence had been affirmed on appeal to the Supreme Court of the United States and that his incarceration was impending; this was proved by the uncontroverted testimony of contemnor's remarks at the dinner tendered to him in Ohio, on June 25, 1951. That he was advised to appear in this court on Monday, July 2, 1951 is established by the stipulated testimony of an attorney who was acting on his behalf as a friend, if not in fact as his legal adviser. These instructions were given to the contemnor by his attorney after the proposed order of July 2, 1951 had been served upon the attorney with notice of settlement. We have drawn no inference from the service of this proposed order and notice of settlement upon the contemnor's attorney, for it was not in itself personal notice to the defendant of the steps being taken by the Government.

But we cannot dismiss from mind the importance of the time of this service when it is related to the instructions given on the following day to the defendant to appear in court on July 2, 1951. While there is no direct evidence that the attorney brought the proposed order to the attention of the contemnor, there is also no direct evidence to establish the contrary. It is only reasonable to infer that the attorney at this same time advised the defendant of the reason for his appearance in court on July 2, 1951 and of the receipt of the proposed order directing surrender. Wigmore on Evidence, 3d ed. Secs. 285, 288, 289; Cf. United States v. Cotter, 2 Cir., 60 F.2d 689, 692. The circumstances and the uncontroverted evidence presented lead only to the conclusion that the defendant's flight from New York City in the morning of June 30, 1951 was to wilfully make himself a fugitive and to contumaciously disobey an order of imprisonment.

Evidence of flight is ordinarily "of slight value, and of none whatever unless there are facts pointing to the motive which prompted it". People v. Fiorentino, 197 N.Y. 560, 567, 91 N.E. 195, 198. Proof has been abundant to justify the inference that the contemnor was in flight from the order directing his surrender as well as from the warrant issued upon his default in failing to surrender. To find, under the facts established in this case, that he was in fact a fugitive from a warrant of arrest but without knowledge of the order of the court directing his surrender and the issuance of the warrant is to quibble in terms and ignore the evidence; to do so is to make a distinction where none exists either in law or logic.

But the contemnor urges that these proceedings must be dismissed because the court is without power to adjudge in contempt a defendant in a criminal case who has been released on bail for his failure to appear when ordered to do so. It is argued on behalf of the contemnor that "in the absence of a statute which makes it a punishable offense to flee from justice, the only remedy available against a defendant who jumps his bail, either before or after conviction, is the issuance of a bench warrant for his arrest, even if his flight is made with knowledge of an express direction, order or command of the court for his appearance or surrender."

We do not accept this as a correct statement of the law.

When it was found that a substantial question of law was involved in the appeal from the judgment of conviction, the contemnor was released on bail. He was granted bail, not by favor but as a matter of right. With the enjoyment of that right there was imposed on contemnor an obligation to observe the terms of his bail—to be available to submit himself to the orders of court when required to do so and to obey all orders directing his appearance. That forfeiture of the bond does not always accomplish obedience to these orders is established by the facts now before us. Without power in the court to punish for wilful disobedience of these orders the only means remaining for securing fulfilment of the obligation to observe the terms of the bail would be rendered ineffectual. The judicial process must have inherent within it the power to punish wilful disobedience of orders directed to a defendant who has been released on bail. Any other rule would permit a defendant to avoid standing trial or submitting to sentence imposed following conviction, with the knowledge that the sole penalty would be the forfeiture of bail—a matter of convenience to a person of means and a matter of indifference when bail has been posted by others.

Although we have repeated and all too frequent violations of our laws, they arise most often from the human qualities of man and from the frailty of his nature. These violations of law do not find root in a universal disrespect for our courts and a common disregard for judicial mandates. Nor do we find a general disregard of the terms of bail by defendants. Thus, the right to bail has survived even though the power of the court to punish a fugitive defendant for contempt has rarely, if ever, been exercised. But, at times, because of the failure of courts to invoke and apply this power, the administration of justice has been seriously impeded.

While it is better that justice be administered with a minimum of occasions on which the power to punish for contempt is exercised, there are times when the failure of a court to act under that power serves only to inculcate an unwholesome disrespect for judicial process. Where we have present, as here, facts indicating a deliberate, wilful and contumacious disregard for orders of the court, our path is well-defined.

The failure of the courts in the past to exercise the power to punish fugitive defendants for contempt has in large measure been due to the difficulties of proof of the knowledge or notice to the fugitive of the making of an order directing his appearance or surrender, or to the absence of such an order. Without such evidence or such order, the wilful nature of the fugitive's nonappearance cannot be established beyond a reasonable doubt, and it does not appear as the intentional, contumacious and deliberate act essential to a criminal contempt. We find no reported case holding the court without power when this evidence has been presented; neither have we been able to find any reported decision holding such power does reside in the court.

■ But, quite apart from the inherent power of the court to punish in these instances for contempt, we find a statutory grant of power. Section 401(3), Title 18 U.S.C.A. provides that "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\*   \*   \*   \*   \*   \*

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. June 25, 1948, c. 645, 62 Stat. 701."

The statute contains no express provision excepting therefrom orders directed to a defendant released on bail and we find no reason for implying such an exception.

That the defendant had notice and knowledge of the order of November 10, 1949 made by Judge Bondy is established beyond a reasonable doubt by the fact that it was made on the contemnor's own affidavit and that, thereafter, he availed himself of its

provisions by returning to his home in Cleveland, Ohio. That the contemnor wilfully and contumaciously disobeyed the terms of the order was proved beyond a reasonable doubt by his arrest on October 10, 1951 at Laredo, Texas.

We find, too, that it has been established beyond a reasonable doubt that not only did the contemnor have notice and knowledge of the order of July 2, 1951 made by Judge Ryan, but that he wilfully and contumaciously disobeyed the terms of that order.

■ The contemnor is, therefore, found guilty of both charges of contempt preferred against him. It is intended that the foregoing shall constitute the certification of the court as required by Rule 42(a), Fed.R.Crim.P.

It is directed that the contemnor be produced in court on Thursday, December 27, 1951, at 10:30 a. m. in Room 1506, for sentence.