**Anthony MAENZA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16158.**

United States Court of Appeals
Fifth Circuit.

March 21, 1957.

G. W. Gill, Gerard H. Schreiber, New Orleans, La., Charles A. Bellows, Chicago, Ill., for appellant.

E. E. Talbot, Jr., Asst. U. S. Atty., M. Hepburn Many, U. S. Atty., New Orleans, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from sentence of imprisonment imposed upon Appellant Anthony Maenza by the Court below upon his conviction in a trial by the judge (jury being waived) upon an indictment for violation of Title 18, Section 1073, U.S.C.A.[1] The indictment charged that appellant "did travel in interstate commerce * * * from New Orleans, to Oak Park, Illinois, intending thereby to avoid prosecution for an offense of murder committed by him under the laws of the State of Louisiana, in New Orleans, Louisiana, on June 16, 1950".

Appellant filed a motion and supplemental motion for acquittal at the end of the government's case and a like motion after all of the evidence was in, based upon many different grounds, including the claim that the evidence failed to sustain the charges of the indictment. The Court below denied these

---

1. *"Flight to avoid prosecution or giving testimony.* Whoever moves or travels in interstate * * * commerce with intent either (1) to avoid prosecution * * under the laws of the place from which he flees, for murder, * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both * *."

motions and returned a verdict of guilty and entered judgment thereon. Motion for a new trial was also filed and denied. The only claim of error with which we shall deal is that based upon the failure of the evidence to make a case under the indictment, the other errors assigned having been examined and found to be without merit.

■ The government introduced competent evidence from which the conclusion could be reached that appellant boarded an airplane in Chicago on the morning of June 16, 1950,[2] under the name of J. Cozei, and traveled to New Orleans, arriving there about 4:20 P.M. in company with two other men, Rugendorf and Bagnola, and that he was met at the airport by Harry Widger.[3] Appellant vigorously attacks the credibility of some of the witnesses by whom such arrival was established but the objections argued go to the weight of this testimony rather than its admissibility. No direct evidence was offered by the government tending to prove that appellant ever got closer to New Orleans than the airport which is several miles distant or what, if anything, he did while there; or when, how or why he left New Orleans; or that he was implicated in the murder of Stern or when, prior to April 2, 1953, he was advised that he was wanted in connection with that murder. All of these and other essential facts the government sought to prove by circumstantial evidence and by admissions on the part of appellant.

Agent Wolfe of the Federal Bureau of Investigation testified that he began looking for appellant in Chicago May 26, 1951, and apprehended him there April 2, 1953. In the intervening time, the agent had frequently contacted appellant's mother, two brothers, two sisters and other members of his family and several friends, advising them that appellant was a fugitive from justice. He and three other F.B.I. agents arrested appellant in a hotel room hiding in a recess behind the folding bed, being forced to drag him out.

In answer to several questions the agents put to him, appellant made the statements relied on, first saying: "All right, you got me". When asked why he was hiding, appellant responded, "Well, I had nothing to lose. I took a chance." When asked why he had not turned himself over to the government

2. This chronology of events will be helpful in understanding the testimony:

June 16, 1950, at 4:20 o'clock P.M., appellant arrived by plane at Moisant Airport.

June 16, 1950, during the night, Henry Stern was robbed and beaten to such extent that he died a few days later.

May 11, 1951, affidavit was filed by New Orleans police charging appellant, Rugendorf, Bagnola, Widger and two others with Stern's murder.

May 23, 1951, U. S. Attorney at request of New Orleans police filed affidavit against appellant for fleeing to avoid prosecution.

May 24, 1951, State grand jury indicted appellant and these five others for the murder of Stern.

April 2, 1953, Appellant arrested by F.B.I. in Oak Park, Illinois, and turned over to state authorities for extradition to Louisiana; during his detention he made the statements and admissions to federal and state officers as detailed *infra*.

September 3, 1953, Illinois Judge discharged appellant upon Writ of Habeas Corpus because testimony was incredible.

November 3, 1955, Appellant again apprehended in Chicago and brought to New Orleans to answer this federal charge.

November 3, 1955, Federal Indictment against appellant for flight.

May 3, 1956, New Federal Indictment against appellant for flight.

May 9, 1956, Writ of Habeas Corpus applied for by appellant and dismissed May 10, 1956, and appeal prosecuted May 15, 1956.

May 21–23, 1956, Appellant tried and convicted followed by this appeal.

3. Widger pled guilty to the murder of Henry Stern in a state court of Louisiana and was sentenced to life imprisonment. The government offered him as a witness against appellant but he refused to testify on the ground that he feared that he would be killed if he did so. See the decision in No. 16,201, Widger v. United States, to be subsequently published. [244 F.2d 103.]

officials, appellant responded, "Well, I'm glad it's all over * * * Me turn myself in? * * * You got to catch me * * * You guys have been looking for me almost three years." Appellant was very abusive to the agents, even accusing them of causing the death of his mother by "camping on her doorstep", and of bothering all of his family.

After these statements had been offered in evidence, the Court asked the witness whether appellant had been advised previously why he was being arrested, and the witness answered that he had told appellant he was "under arrest for unlawful flight to avoid prosecution for the crime of murder". Appellant denied knowing Joseph Bagnola and stated that he had never been in New Orleans in his life. He refused to answer any questions concerning the murder of Henry Stern. Wolfe's testimony was corroborated in general by that of Agent Wheeler who participated in the arrest.

As the result of this arrest, appellant was turned over to authorities of the State of Illinois to be held upon request for extradition by officials of the State of Louisiana in connection with the murder indictment.[4] While appellant was being held by the Cook County, Illinois, authorities and before his release upon habeas corpus, Mr. Haggerty, Assistant State Attorney for the Parish of Orleans, talked with him in company with a New Orleans police officer. Appellant admitted to them that he knew that the F.B.I. had been looking for him for over two years but he did not admit knowing why he was being sought; and he denied knowing the murdered man or his wife. He admitted to them that he was acquainted with Bagnola and Rugendorf. He declined to waive extradition as requested by them.

The attorney admitted that the federal complaint charging flight to avoid prosecution, upon which appellant had been arrested, was filed upon his request and was based, not on any information that appellant had so fled but because "after the indictment was rendered against the defendant and we knew that he was not in New Orleans, after we searched, so we asked assistance of the United States Attorney to file an unlawful flight warrant".

This evidence gives rise to rational suspicions but it is not in our opinion sufficient to satisfy the judicial mind. We held in Barrow v. Owen, 1937, 89 F.2d 476, 478, that "* * * the gravamen of the offense charged in the fugitive felon act is that the defendant fled a state with intent to avoid prosecution therein, and mere absence from the state of prosecution, though it renders one a fugitive from justice for interstate rendition, Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544, is not sufficient proof of the federal crime * * *" And see to the same effect Barker v. United States, 5 Cir., 1949, 178 F.2d 803, 805.

■ It is universally held that in cases based upon circumstantial evidence, a verdict of guilty may be rendered by the trier of the facts only when the evidence may be said to exclude every reasonable hypothesis except that of guilt and to be inconsistent with every hypothesis of innocence. Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 13, and cases cited; McTyre v. United States, 5 Cir., 1954, 213 F.2d 65, 67; Carter v. United States, 5 Cir., 1952, 194 F.2d 748, 749, and cf. Bryan v. United States, infra.

■ Since the evidence in this record does not satisfy these requirements the judgment of the Court below is reversed and the case remanded for a new trial.[5]

Reversed and remanded.

---

4. Upon the hearing before the Chicago judge in connection with the attempt to extradite appellant to New Orleans, appellant was discharged because the judge thought that the evidence against him was unbelievable.

5. Cf. Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, affirming same case, 5 Cir., 1949, 175 F.2d 223.