**Harry WIDGER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16201.**

United States Court of Appeals Fifth Circuit.

May 9, 1957.

Rehearing Denied June 26, 1957.

**104**

F. Irvin Dymond, New Orleans, La., for appellant.

E. E. Talbot, Jr., Asst. U. S. Atty., M. Hepburn Many, U. S. Atty., New Orleans, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellant, Harry Widger, was sentenced to a year's imprisonment for refusal to answer questions asked him in a criminal prosecution.[1] The sentence was to begin at the termination of a sentence of life imprisonment for murder appellant was already serving in the Louisiana Penitentiary.

Appellant had plead guilty to murdering one Henry Stern in New Orleans, Louisiana, June 16, 1950. He was called by the government as a witness in the prosecution of Anthony Maenza for violating Title 18, Section 1073, United States Code Annotated, by traveling in interstate commerce with intent to avoid prosecution for said murder.[2] Appellant refused to answer questions by the United States Attorney and the Court on the ground that to do so would subject him to imminent danger of being murdered.[3]

---

1. In Maenza v. United States, 5 Cir., 242 F.2d 339.

2. This trial was not held until May, 1956, as difficulty was encountered in apprehending Maenza. He was convicted and sentenced to a term in prison. His case has been reversed and remanded for another trial.

3. Here are some of his answers: "The Court: What do you mean when you say you fear for your life? * * * The Witness: Your Honor, I have been in the penitentiary for four years, and I saw people come from New Orleans who testified and I have heard of them a few days later being killed. They term you

He answered that he was not standing on any constitutional right, that no threats had been made against him but he asserted that he was positive that he would be killed if he testified.

The Court took appellant upon examination and reminded him that if a detainer were not placed against him, he could be released after ten years and six months, stating, "You realize that if you refuse to testify in this and other cases growing out of this killing, that you may wind up the only one serving time for the offense". Appellant's attitude remaining unchanged, the hearing was recessed for the night with the statement by the Court to the witness: "Well, you had better give this some more thought".

The following morning appellant was asked whether he knew Anthony Maenza and whether he drove from New Orleans to Memphis on the evening of June 16, 1950, and whether he, Joseph Bagnola and Anthony Maenza were at the Stern home on the night of June 16, 1950, all of which questions he refused to answer on the plea that to do so would be to sign his death warrant.

The Court thereupon read to appellant the "pertinent Louisiana law" governing the rights of prisoners sentenced to life imprisonment to obtain commutation of their sentences under the circumstances there recited and stated, "Now the Court orders you to answer these questions"[4]. Upon appellant's refusal to answer, the Court stated:

"The Court finds that the questions propounded to this witness were relevant and material to the issues of this case; that the conduct of the witness in refusing to answer is contemptuous and that the witness is in contempt of Court. The Court will add that the conduct of the witness in refusing to answer the questions is an obstruction of justice.

"Having found the witness guilty of contempt, the Court sentences him * * * for imprisonment * * * for a period of a year and a day. The sentence is to commence at the expiration of the sentence which this witness is now serving in the State Penitentiary or at such time as the witness may be otherwise lawfully released by the state authorities and a detainer will be placed against him * * *

"Now if that interferes with your being released at the end of ten and a half years, you have yourself to blame. It may well be that this sentence will serve that purpose."

The Court was proceeding under Rule 42(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.[5] The foregoing took place in open Court on May 21st and 22nd and the judgment was signed June 20, 1956. This judgment recited that appellant refused to answer the questions propounded to him, that he was ordered to answer said questions and failed to comply and that "for the reasons orally assigned", he was adjudged guilty of contempt for wilfully and knowingly violating the orders of the Court.

During the foregoing proceedings, appellant was not represented by counsel and no interval elapsed between the refusal to answer the questions and the adjudication of contempt and no notice was given him (except as appears from the

as a 'rat' in the penitentiary and I don't want that term; I want to live as long as I can. I don't think anybody else wants me to testify and get myself killed * * * I still have all this term to do and I want to go back and pay my debt to society in the right way".

4. Thereupon the prosecuting attorney asked appellant whether he knew Maenza, Bagnola and Rugendorf and the further question: "Did you flee from the City of New Orleans on June 16, 1950,

in the company of Anthony Maenza and Joseph Bagnola to avoid prosecution by the State of Louisiana?"

5. "Rule 42. Criminal Contempt
"(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

language quoted above), that he stood charged with contempt.

On June 1st, eight days after the proceedings above outlined and nineteen days before the judgment was entered, appellant appeared by attorney and filed a "Motion to Vacate the Judgment of Conviction and to Recall the Sentence", same being sworn to by the attorney and supported by appellant's affidavit. The motion set out that, in view of the fact that appellant was under life sentence and was not subject to parole as long as the contempt sentence remained outstanding, that sentence would cause appellant to be imprisoned for the rest of his natural life rather than for a term of ten years and six months as was customarily the case with prisoners whose behavior was good. Appellant's affidavit stated that he would be subjected to danger of loss of his life or grave bodily harm if he testified against Maenza, and that the warden of the prison had expressed in the presence of a number of officials that such testimony by appellant would "tend to place him in grave danger of physical harm." [6]

■ The Court below entered its judgment without passing on this motion to vacate and to recall the sentence and without hearing any testimony to determine the truth or falsity of the statements and claims made by appellant. This we think was error. A Court would not lightly require a witness to testify if it were convinced that death or serious bodily harm would ensue therefrom. The Court below evidently did not believe ap-

pellant's testimony. But it had no right to reject without a hearing his uncontradicted statements and particularly was this true when appellant's statements were buttressed by his affidavit and that of the attorney in connection with the motion. From these documents it appeared that the warden of the penitentiary would tend to corroborate appellant's testimony and that the United States Attorney had been advised of appellant's apprehensions.[7]

The Supreme Court [8] reversed a decision of the Court of Appeals for the Third Circuit [9] which struck from the record and refused to consider a "Petition for Reconsideration of Allowance of Bail Pending Appeal" filed in the District Court two weeks after the contempt order had been entered, on the ground that the facts disclosed by the petition were "not before the court when it found appellant in contempt". In doing so, the Supreme Court emphasized the solicitude which courts should employ in probing every available source of truth in determining whether the court ought to "discharge the contemnor for good cause". We hold that it was error for the Court below to fail to have a hearing and to consider the facts disclosed in the motion, filed as it was prior to entry of the order sentencing the appellant, especially in view of the harsh results the Court below and appellant's attorney thought to be a consequence of such a sentence.

■■ Moreover, we do not think the proceedings in the Court below were con-

6. The affidavit set forth that appellant had advised the attorney representing the government of his fears and had, by said official, been promised that he would not be asked any questions tending to incriminate or degrade him or subject him to danger; and further that appellant would not be prosecuted regardless of the outcome of his testimony. It further set forth that appellant was tried and sentenced when he was "without counsel, also without any effort at arraignment or procurement of any information, indictment or other definite charge * * *" ·

7. It is true that appellant stated at one point that he was not standing on his

constitutional rights but this statement was made when he was not represented by counsel. Some of the questions he refused to answer could not be considered as technically covered by Fifth Amendment provisions against self-incrimination but some were so covered, e. g., the question quoted in footnote 4, supra.

8. Hoffman v. United States, 1951, 341 U.S. 479, 489, 71 S.Ct. 814, 819, 95 L.Ed. 1118; and Cf. Emspak v. United States, 1955, 349 U.S. 190, 75 S.Ct. 687, 99 L. Ed. 997.

9. United States v. Hoffman, 1950, 185 F. 2d 617, 621.

ducted in obedience to the requirements of Rule 42(a). By its terms, a criminal contempt may "be punished summarily" only "if the judge certifies" that he witnessed the alleged contemptuous conduct and that it was committed in his actual presence. The rule further provides that the order must "recite the facts". This record contains no certificate at all by the judge and the order does not recite any fact but merely the conclusions of the Court.

This rule providing for punishment of contempts summarily must be given a "narrow construction" providing, as it does, for punishment without affording the accused "the normal safeguards surrounding criminal prosecutions"; it being plain from the history of contempt procedures that the courts and congress have demonstrated a definite "plan to limit the contempt power to 'the least possible power adequate to the end proposed' ".[10] It is, therefore, essential that courts proceeding summarily "must be meticulously careful to observe * * * procedural * * * safeguards".[11] While it appears from the record as a whole that the contemptuous conduct was in the presence of the Court, no certificate was signed by the Judge as required by the rule, and the remaining portions of the record can be considered only as assisting the Court in construing the terms of the certificate.[12]

We do not hold that appellant was justified in his refusal to answer the questions propounded to him by the Court and by the prosecuting attorney in its presence. Nor are we undertaking to determine or control what on the full facts the Court's action and order should be. We hold merely that the Court should have conducted a hearing on the matter put forward by defendant as his reason for not testifying and should, with the observance of all procedural requirements designed to safeguard appellant's rights, have required all of the relevant facts to to be developed so that it could pass intelligently on the claims asserted by appellant and impose sentence with, not a part of, but all the relevant facts in mind.

Reversed and Remanded.

JONES, Circuit Judge (specially concurring).

This Court holds merely that the trial court should have conducted a hearing on the matter put forward by the appellant as his reason for not testifying and with that holding I am in accord. The majority seems to say that the absence of a certificate would require reversal. I doubt that there is any rule of reason or any precedent that makes the certificate a jurisdictional requirement to the imposition of summary punishment under Rule 42(a). The appellant did not raise the question in his motion to vacate. Had he done so the error, if any there was, could have been corrected by the trial court. Field v. United States, 2 Cir., 1951, 193 F.2d 86. The appellant does not raise the question here. There is not, in the case before us, any suggestion that the tone of voice or demeanor of the appellant was contemptuous or a contributing factor to the contempt. He merely refused to testify on the stated ground that doing so would imperil his life. The record, without the certificate, fully re-

---

10. Cammer v. United States, 1956, 350 U.S. 399, 404–405, 76 S.Ct. 456, 458, 100 L.Ed. 474.

11. Yates v. United States, 9 Cir., 1955, 227 F.2d 848, 850.

12. Hallinan v. United States, 9 Cir., 1950, 182 F.2d 880, 882, and cf. Field v. United States, 2 Cir., 1951, 193 F.2d 86.
Even where the ability of the Court to conduct proceedings before it is directly obstructed by threatening demonstrations committed in its presence during the trial, the Courts follow the procedure of filing the certificate and reciting the facts in the order as required by Rule 42(a). United States v. Hall and companion cases, 2 Cir., 1949, 176 F.2d 163, certiorari denied 338 U.S. 851, 70 S.Ct. 90, 94 L.Ed. 521, and United States v. Green, 2 Cir., 1949, 176 F.2d 169, certiorari denied 338 U.S. 851, 70 S.Ct. 91, 94 L.Ed. 521. This certificate is necessary in order that it may appear of record just what the judge acted upon and in order that it may not be necessary for the judge to testify.

flects the facts out of which the adjudicated contempt arose. The certificate would be superfluous. Believing that the requirement of a certificate was not jurisdictional and that the error, if any there was, worked no prejudice, I would not consider the question in this case.