Steven Charles **GILLMAN**, Petitioner,

v.

William **SAXBY**, Attorney General of the United States, and S. M. Hull, Administrator, Case Management, United States Department of Justice, Bureau of Prisons, Respondents.

Civ. No. 75–0082.

United States District Court,
D. Hawaii.

May 7, 1975.

Steven Charles Gillman, pro se.

Thomas P. Young, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for respondents.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

SAMUEL P. KING, Chief Judge.

█ Gillman, by his petition filed in this court, seeks a declaration, pursuant to 28 U.S.C. sections 2201 and 2202, that his federal sentence is and has been running during the time he has spent in a New York State Prison. On March 28, 1975, an Order to Show Cause was issued by this court ordering the United States Attorney on behalf of the respondents to show, by written memorandum, cause, if any there be, why a hearing date should not be set and, if set, why petitioner should not be present at such a hearing. Since the government does not dispute the facts as presented by petitioner, a hearing is not necessary to rule on the petition.

## FINDINGS OF FACT

On October 1, 1973, petitioner pleaded guilty to federal charges before this court. The next day, bond was posted and he was released pending sentencing. Thereafter, petitioner was arrested by state authorities in New York. A Writ of Habeas Corpus Ad Prosequendum was later issued by this court to have petitioner returned to Hawaii for sentencing. On December 17, 1973, petitioner was sentenced to a term of imprisonment of six years, "mittimus forthwith." [1] He was then returned to New York where he pleaded guilty to the state charges and was sentenced to an indeterminate term of imprisonment with a maximum term of ten years and a minimum of five years. The sentencing judge then stated:

> This sentence is to be served concurrently with that which you are now serving.[2]

This reference was to the federal sentence previously imposed by this court.

Notwithstanding both of the above sentencing orders, petitioner was not taken into federal custody to begin his federal sentence, but instead was given over to the New York Department of Correctional Services to begin his state sentence. Thereafter, in response to several letters written by petitioner in a reasonable attempt to clarify his status, he was informed that his federal sentence was not running concurrently with his state sentence or vice versa, and would not begin until his release from

---

1. United States v. Gillman, Criminal Number 13,310, Transcript of Proceedings, December 17, 1973, at p. 2 (United States District Court for the District of Hawaii).

2. The People of the State of New York v. Gillman, Criminal Number 3625-73, Transcript of Proceedings, February 28, 1974, at p. 5 (New York Supreme Court).

state prison. Petitioner finally sought relief in this court.

It seems obvious that if petitioner had been incarcerated in federal prison after being sentenced in New York, both sentences would now be running concurrently as ordered by the state judge. Further, it is clear that the District Court judge was fully aware of the pending state charges when he ordered mittimus forthwith. While the judge could not order the sentence to run concurrently with the state sentence since no state sentence had then been imposed, his intent was clear. This court fails to understand why the state and federal officials involved failed to comply with the clear orders of both judges.

## CONCLUSIONS OF LAW

In support of his position, petitioner refers the court to United States v. Croft, 450 F.2d 1094 (6th Cir. 1971).[3] This case is directly in point. Indeed, the present case is, if anything, more compelling than the Croft case. There, Croft had been arrested by the state after being arrested by the federal government, but before a plea had been entered. The court held that the prisoner was entitled to have his federal sentence corrected to commence as of the day of sentencing since the federal judge had ordered immediate commitment and subsequently the state judge had ordered concurrent state sentences. Here, it was not only after the federal arrest, but after petitioner had pleaded guilty that he was arrested by the state.

Completely ignoring the Croft case, respondents argue that since petitioner had not been sentenced in this court at the time of his arrest by the state, the state had "primary custody" over him and this court had "secondary custody." They then reason that given this primary custody, the effect of the Writ of Habeas Corpus Ad Prosequendum was to "borrow" petitioner from New York for the "sole purpose" of sentencing him. Therefore, "[b]y law . . . petitioner had to be returned to New York after he was sentenced by this Court, notwithstanding this Court's utterance of 'mittimus forthwith'." [4]

In short, respondents' position is that this court had no authority to order that petitioner's incarceration begin immediately. None of the cases cited by respondents support this position. For example, in Jefferson v. United States, 389 F.2d 385 (2d Cir. 1968) (per curiam), cited by respondents, the court was presented with the question of whether petitioner was entitled to credit on his federal sentence for time held in custody after he had been released from the state prison, where he was serving a previously imposed state sentence, to the federal government for disposition of the federal charges. Petitioner did receive credit for this time from the state. Nothing is said in the opinion with respect to whether or not the terms were to run concurrently or consecutively. And, finally, the time in question was prior to the federal sentencing and after the state had sentenced and incarcerated him. Apparently, the state not only had arrested him first, but had sentenced and incarcerated him prior to the federal involvement. Here, the question is whether this court had the authority to impose the sentence as it did, having found petitioner guilty prior to the state arrest, and if so, whether petitioner should suffer for an apparent error in not following the court's order. The Croft case supports the court's authority to order immediate incarceration.

In addition, the reasoning of the court in Zerbst v. McPike, 97 F.2d 253 (5th Cir. 1938), cited by respondents, supports the conclusion that the court had such authority. The court in the Zerbst case concluded that the petitioner was not entitled to the credit in question. The court first pointed out that "no

---

3. See also Smith v. Swope, 91 F.2d 260 (9th Cir. 1937).

4. Respondents' Memorandum in Opposition to the Petition for a Declaratory Judgment, filed April 28, 1975, at p. 2.

time [had been] fixed for the commencement of the sentence." [5] It then reasoned that the government first arresting an individual gains prior jurisdiction over him. Since the state was the first arresting government in that case, no credit was due on his federal sentence when the prisoner was ordered to serve his state sentence before . commencing his federal sentence.[6] Here, of course, the federal government was not only the first arresting government, but also the first to find petitioner guilty and sentence him. Thus, under the reasoning of one of the cases upon which respondents rely, it is clear that the federal judge had the authority to impose the sentence as he did given the prior arrest and guilty plea.

■ Since the judge did have this authority, the question is whether petitioner should receive the credit in question even though he was not placed in federal prison. As was stated by the court in McIntosh v. Looney, 249 F.2d 62, 64 (10th Cir. 1957), cert. denied, 355 U.S. 935, 78 S.Ct. 418, 2 L.Ed.2d 417 (1958):

> We are in accord with appellant's academic premise that a prisoner cannot be charged with a detriment attributable to the misfeasance or nonfeasance of the United States Marshal . in executing or failing to execute an order of the federal court. [citation omitted].

There, the court found no failure to execute the court's order. Here, there is no question that the court ordered the sentence to begin immediately and that that order was not obeyed.

Under these circumstances and in light of the clear intent of both the state and federal sentencing judges, petitioner is entitled to a declaration that his federal sentence began at the time he was sentenced in this court and has continued to run to the present. Judgment will be entered for petitioner and against respondents on the merits.

5. Zerbst v. McPike, 97 F.2d 253, 254 (5th Cir. 1938).

6. The court stated:
Under the inviolable rules of comity, which are reciprocal, the State having first arrested and imprisoned McPike could not without its consent be deprived of his custody until through with him. [citations omitted].
*Id.* Here, however, the same rules of comity compel the opposite result. As the court said in the *Croft* case:

Here, there is no dispute over comity. The state court recognized prior jurisdiction of the federal court over the person of appellant Croft, and emphasized such . recognition of prior jurisdiction of the federal court by. making the state's sentence run concurrently with the federal sentence.
United States v. Croft, 450 F.2d 1094, 1099 (6th Cir. 1971).