**Gary HARKINS, Appellant,** ·

v.

**Harry LAUF, Records Officer, Missouri State Penitentiary, Respondent.**

**No. 58995.**

Supreme Court of Missouri, En Banc.

Feb. 9, 1976.

Howard McFadden, Public Defender, Jefferson City, for appellant.

John C. Danforth, Atty. Gen. (William F. Arnet, Asst. Atty. Gen.), for respondent.

MORGAN, Judge.

Appellant sought a declaratory judgment that his sentence of twenty-five years for armed robbery commenced on March 28, 1969. After an evidentiary hearing, the trial court held that the sentence commenced on October 4, 1971, and appeal was perfected to the Court of Appeals, Kansas City District. Upon application of respondent, the cause was ordered transferred to this court and we consider the same as on "original appeal." Rule 83.09.

On September 1, 1968, appellant was arrested in Poplar Bluff for armed robbery in connection with the robbery of the Puxico State Bank. The next day he posted bond and was released. Approximately two months later, appellant was arrested by federal authorities for the robbery of a bank in Tennessee and held under charges pending in the United States District Court (Western District) of that state. The record reflects that appellant was held in federal custody either in Memphis or at the Federal Medical Center in Springfield, Missouri, during all times of interest in the instant case. While appellant was in the medical center, federal marshals acting in pursuance to a writ of habeas corpus ad prosequendum issued by the Circuit Court of Butler County, Missouri, brought him to Poplar Bluff. There the appellant entered a plea of guilty to the pending charges on March 28, 1969, and was sentenced to imprisonment for a term of twenty-five years under a judgment which provided that the sentence was "to commence on the 28th day of March, 1969 . . ." Immediately thereafter the marshals took appellant to Memphis, Tennessee, for proceedings related to the federal charge. After hearings concerning his mental competency, appellant was committed again to the medical center under 18 U.S.C., Section 4246, until he should be adjudged mentally competent to stand trial or until the charges pending against him should be otherwise disposed of

according to law.[1] After some thirty-one months, it appears that the federal charges were dismissed and he was ordered released. Pursuant to a detainer filed by the state, appellant was released to authorities of Missouri and on October 4, 1971, he was received by the Missouri Department of Corrections.

The question becomes obvious. Must the Department of Corrections credit appellant on the state sentence with the thirty-one month period of federal confinement?

We first point out that the portion of the judgment calling for the sentence to "commence" on March 28, 1969, is not dispositive and in fact has no bearing whatever. As recently said in *Johnson v. Haynes*, 504 S.W.2d 308, 310 (Mo.App.1973):

> The courts of this State have repeatedly held that the commencement of a sentence is by operation of law. A circuit court has no power to fix a date for the commencement of a sentence. If such a date is fixed, it is surplusage. *Higlin v. Kaiser*, 352 Mo. 796, 797, 179 S.W.2d 471, 472 (banc 1944); *State v. Amsden*, 299 S.W.2d 498 (Mo.1957); *State v. Hicks*, 376 S.W.2d 160 (Mo.1964); *State v. Testerman*, 408 S.W.2d 90 (Mo.1966). The Department of Corrections may ignore the erroneous and improper statement and commence the sentence when the petitioner is actually received. *State v. Trevino*, 428 S.W.2d 552 (Mo.1968).

*Jackson v. Kaiser*, 353 Mo. 919, 185 S.W.2d 784 (banc 1945), often quoted as the answer in this state to the question posed, involved similar facts. The following excerpts are taken therefrom:

> "The chief rule which preserves our two systems of courts from the actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it

assumed control, before the other court shall attempt to take it for its purpose." *Ponzi v. Fessenden*, 258 U.S. 254, loc. cit. 260, 42 S.Ct. 309, loc. cit. 310, 66 L.Ed. 607, 22 A.L.R. 879. See *Cato v. Smith*, 9 Cir., 104 F.2d 885; *Zerbst v. McPike*, 5 Cir., 97 F.2d 253.

> "As an easy and flexible means of administering justice and of affording each sovereignty the right and opportunity to exhaust its remedy for wrongs committed against it, there has evolved the now well established rule of comity which is reciprocal, whereby one sovereignty having exclusive jurisdiction of a person may temporarily waive its right to the exclusive jurisdiction of such person for purposes of trial in the courts of another sovereignty. Thus the offender is accorded a speedy trial and the administration of justice is expedited by the availability of evidence, which might through lapse of time be lost, but such a waiver is a matter addressed solely to the discretion of the sovereignty, or its representatives having power to grant it. *Ponzi v. Fessenden*, supra, and *Ex Parte Aubert*, D.C., 51 F.2d 136. The privileges granted by this flexible rule of comity should and must be respected by the sovereignty to which it is made available, and this respectful duty is reciprocal, whether federal or state, because neither sovereignty has the power to override it. Under the free exercise of this rule, no right or immunity granted by the constitution, laws, or treaties of the United States, is invaded or impaired." *Lunsford v. Hudspeth*, 10 Cir., 126 F.2d 653, loc. cit. 655. (l.c. 786).

\*     \*     \*     \*     \*     \*

The next point raised by petitioner is stated in his brief as follows: "Petitioner's Missouri sentence began to run on the day of sentence. It was interrupted and waived when the State authorities

---

1. See *Harkins v. State*, 494 S.W.2d 7 (Mo. 1973), wherein this court affirmed the trial court's denial, after an evidentiary hearing, of appellant's petition to withdraw his guilty plea under Rules 27.25 and 27.26 based on his mental state.

surrendered him to the United States Marshal. The State waived its claim and petitioner cannot be compelled to serve his sentence in installments."

The petitioner contends that by virtue of Section 4106, Mo.R.S.A., which provides that when a person is convicted the sheriff shall "without delay" deliver the convict to the keeper of the penitentiary, his State sentence started on December 5, 1941, and that he is entitled to credit on his State sentence for the time he served in the Federal penitentiary. Or, to state his contention in another way, his State sentence started on the day he was sentenced, and the State waived its right to start his State sentence after the expiration of his Federal sentence, this for the reason that he cannot be compelled to serve his sentence in installments.

\* \* \* \* \* \*

There might be some merit in petitioner's contention if the State court had exclusive custody of the petitioner on the date he was sentenced by the State court. But in this case, the Circuit Court did not have exclusive custody of the petitioner on the date he was sentenced in that court. (l.c. 787).

As said in *Brown v. State,* 452 S.W.2d 176 (Mo.1970), l.c. 178:

"A prisoner has no standing to choose between two sovereignties each desiring his custody. He does not have a choice of keepers." *United States ex rel. Spellman v. Murphy,* 7 Cir., 217 F.2d 247, 251. Whether the state should voluntarily surrender a prisoner to the federal authorities to answer a federal charge or whether the federal government should voluntarily surrender a convicted prisoner to the state to answer a state charge, without the consent of the prisoner, are questions of jurisdiction and custody for the determination of the two sovereigns under reciprocal rules of comity, and do not involve a personal right of the prisoner. *Wall v. Hudspeth,* 10 Cir., 108 F.2d 865, 866; *Carson v. Executive Director,* *Department of Parole,* 10 Cir., 292 F.2d 468; *McDonald v. United States,* 5 Cir., 403 F.2d 37, and cases cited, l.c. 38; *Ponzi v. Fessenden,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607, 611. "It is well established that where state authorities surrender a prisoner to the federal authorities for trial, sentence, and execution of sentence before he is to be returned to state custody, the prisoner has no standing to contest the agreement between the sovereigns as to the order of prosecution and execution of sentences; that is, he may not challenge either his original removal from state custody, or his return thereto after the completion of his federal sentence. See *Derengowski v. United States Marshal,* 8th Cir. 1967, 377 F.2d 223; *Hall v. Looney,* 10th Cir. 1958, 256 F.2d 59; *United States ex rel. Moses v. Kipp,* 7th Cir. 1956, 232 F.2d 147; *Gunton v. Squier,* 9th Cir. 1950, 185 F.2d 470; *United States ex rel. Lombardo v. McDonnell,* 7th Cir. 1946, 153 F.2d 919; *Stamphill v. Johnston,* 9th Cir. 1943, 136 F.2d 291, cert. denied, 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457. The State, by giving temporary custody to the federal authorities does so without a complete surrender of its prior jurisdiction over him. *Hayward v. Looney,* 10th Cir. 1957, 246 F.2d 56; *Zerbst v. McPike,* 5th Cir. 1938, 97 F.2d 253." *Bullock v. State of Mississippi,* 5 Cir., 404 F.2d 75, 76. And see *Jacobs v. Crouse,* 10 Cir., 349 F.2d 857; *Krupnick v. United States,* 8 Cir., 286 F.2d 45.

Related questions are considered in *Weber v. Mosley,* 241 Mo.App. 727, 242 S.W.2d 273 (1951); *State v. Whiteaker,* 499 S.W.2d 412 (Mo.1973), cert. denied, 415 U.S. 949, 94 S.Ct. 1472, 39 L.Ed.2d 565; and *State v. Weaver,* 486 S.W.2d 482 (Mo.1972).

■ Under the facts of the instant case, it is quite obvious that at time of sentencing by the trial court appellant was not under the exclusive control and custody of Missouri authorities and that the sentence legally started at the time federal authori-

ties released him to Missouri, if the precedents noted are to be followed.

Appellant concedes as much, but argues that § 546.615, RSMo 1969, is controlling. It provided (as of March 28, 1969), in part, that:

When a person has been convicted of a criminal offense in this state (1) the time spent by him in prison or jail subsequent to the date of his sentence and prior to his delivery to the state department of corrections shall be calculated as a part of the sentence imposed upon him . . .

■ The statute was originally enacted in 1959 and also provided that it was discretionary with the trial court to give credit for confinement prior to sentence. By amendment in 1971 both provisions were made mandatory. Are they applicable to confinement other than when the subject is a state prisoner? We think not. As noted, the second portion of the statute previously authorized discretion as to prior confinement by the sentencing court. Surely the General Assembly was not so presumptuous as to include courts other than those of Missouri. By the same token, the mandatory provisions as to subsequent confinement can only be construed to be applicable to that compelled under the laws of Missouri— and we so hold.

Further, it is suggested that "fairness" dictates that "credit" should be given on the state sentence because there is no federal sentence to which the federal confinement can be applied. The argument is not very persuasive, particularly in view of the fact the federal confinement was not related to the same offense for which appellant was sentenced in the state court. Whether or not the answer should be different if they did arise from the same factual setting can be decided when such a case is presented.

The judgment is affirmed.

HOLMAN, HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent. The court of appeals, Kansas City district, in an exhaustive opinion, which traced the history of laws and court decisions regarding credit against sentences, clearly demonstrated that the modern and more enlightened view nationwide is to allow credit for time in confinement served both before and after sentencing and ordered the thirty-one months served by appellant after sentencing and before entering the state penitentiary to be credited against his twenty-five-year sentence.

It appears that the Kansas City court of appeals would allow the thirty-one-month credit on principles of equity and fairness. I subscribe to the reasoning of that opinion and would concur in it were I on that court, but my dissent from the principal opinion here is not premised on equity or fair play.

I dissent because, in my opinion, the very authorities and rules relied upon in the principal opinion mandate the opposite conclusion. That is, I conclude, based on the same authorities used by the majority, that the thirty-one months should be credited to appellant's sentence.

The first proposition upon which my conclusion is based is that petitioner was, at the time of his state sentence, under the exclusive legal custody and jurisdiction of the state of Missouri and not in the exclusive custody of the United States authorities. The principal opinion assumes that petitioner was in the exclusive custody of the United States and on that premise holds that his sentence did not begin to run until released by federal authorities and delivered to the Missouri department of corrections. I believe this to be an incorrect assumption and will undertake to state the reasons for this belief.

The facts are important. Petitioner was arrested in early September 1968 by state authorities on a state charge of armed robbery of the Puxico State Bank. He was released on bond on this charge on September 4, 1968, and remained at liberty from state incarceration until the day he was sentenced. On November 2, 1968, an information was filed in the circuit court of Stoddard County charging petitioner with the armed robbery of the Puxico State Bank of September 3, 1968. In February 1969, while petitioner was free on bond pending trial on the state charge, petitioner was arrested by federal authorities near St. Louis for the robbery of a bank in Tennessee. He was first taken to a St. Louis hospital for treatment of a physical condition and subsequently to the U. S. Medical Center at Springfield, Missouri, on or about February 17, 1969. He remained at the Springfield facility until March 28, 1969, when he appeared in the circuit court of Butler County for trial on the state charge and at that time pleaded guilty and was sentenced to twenty-five years. His appearance in Butler County circuit court was, at least procedurally, on a writ of habeas corpus ad prosequendum issued by that circuit court.

Petitioner pled guilty to the state armed robbery charge and was sentenced to twenty-five years in the Missouri department of corrections. The judgment and commitment (*mittimus*) recited the charge, plea and judgment of guilt, sentence and commitment. The commitment portion of the judgment is:

WHEREFORE, it is by the Court considered, ordered, adjudged and decreed that the said defendant shall be confined in the custody of the Department of Corrections of the State of Missouri in an institution or institutions designated by said Department in accordance with law for a period of (25) twenty-five years to commence on the 28th day of March, 1969, and the defendant is remanded to the custody of the sheriff, to be by him delivered to the reception center of the Department of Corrections and a certified copy of this judgment is to be delivered by said Sheriff to the Division of Classification and Assignment of the Department of Corrections in accordance with law. And the said Department of Corrections shall receive and safely keep the said defendant until the judgment of the court herein be complied with or the said Defendant shall be otherwise discharged in accordance with law.

Before proceeding further, I must say that I agree that the recitation in this commitment that the sentence is to commence on March 28, 1969, is surplusage because it is the law, and not the commitment, that determines when a sentence commences. The circuit court had no power to order a singular sentence to begin either prior to or subsequent to the date of sentencing although the circuit court could, had petitioner then been under another sentence, order the instant sentence to be consecutive to the earlier one. But there was no other sentence so the circuit court had no power to delay the commencement of the sentence imposed.

After sentence was imposed, the custody of the prisoner was given over to the United States marshal who took him to Memphis, Tennessee, on the federal charge. Petitioner remained in federal prison for the subsequent thirty-one months.

Now there is no Missouri statute that explicitly states that a sentence begins when a prisoner is received at the department of corrections, but there is a statute which prescribes the duties of the sheriff when a person is sentenced to that department.

Section 546.610, RSMo 1959, prior to the 1971 amendment, which amendment is not relevant to this case, provided:

Where any convict shall be sentenced to imprisonment in the penitentiary, the clerk of the court in which the sentence was passed shall forthwith deliver a certified copy thereof to the sheriff of the county, who shall, without delay, either in

person or by a general and usual deputy, cause such convict to be transported to the penitentiary and delivered to the keeper thereof.

This statute was not complied with because the sheriff did not deliver petitioner to the Missouri state penitentiary without delay. This is not to say that I believe the sheriff intentionally violated the law or undertook to evade or avoid his responsibilities. It is obvious that the giving over of the prisoner to the federal marshal was known to all concerned when it occurred. However, it is also obvious that, insofar as petitioner is concerned, he was told by the commitment of the court that there would be no delay in his service of the sentence imposed.

At this point it is important to recall the status of petitioner when he appeared in Butler County circuit court. He had been first arrested, charged, and admitted to bail on the *state* charge. This authorized Missouri to continue with its prosecution to the exclusion of other jurisdictions. Petitioner was not under sentence by any U.S. court. He was merely in the physical custody of the federal authorities. I do not suggest that the federal custody was illegal. It was certainly legal. But because state arrest and prosecution occurred prior to the arrest by federal authorities, the federal custody did not, vis-a-vis the state of Missouri, vest a right to exclusive jurisdiction in the federal authorities. Petitioner had from the time of his state arrest and charge been in the actual legal custody of the state until he was released on bond pending state trial and while on bond was in the legal constructive custody of the state. *United States v. Croft,* 450 F.2d 1094, 1098[3] (6th Cir. 1971).

The petitioner had been admitted to bail by the state court and was at liberty and therefore was in a position where he could be arrested on the street by law officers,— in this case federal officers. Now, if petitioner had been admitted to bail by federal authorities and appeared on his bond on March 28, 1969, in state court, I doubt that

anyone could seriously contend he was not in state custody. Or consider that petitioner had not made bond in state court and remained in the county jail pending trial, and while in jail prior to trial had been indicted by federal authorities in Memphis, Tennessee, and the state authorities handed him over to the federal authorities for arraignment in U.S. court. This, I think, would be done in keeping with ordinary principles of comity so as to effect an orderly administration of justice by both sovereigns—state and federal. If thereafter the federal authorities delivered him back to the state authorities and he remained in county jail and was convicted and sentenced in state court, could there be any question as to which court had jurisdiction over the petitioner? I think not. Clearly the state would have had exclusive custody. Not just because he was in a county jail but because he had been first arrested and charged in state court. *United States v. Croft, supra.*

At the time petitioner came into state court on March 28, 1969, no one—no judicial officer, state or federal—decided he was in the "exclusive custody" of one or the other. It was simply a matter of convenience and comity that the state authorities did not demand the return of petitioner from the federal authorities after his federal arrest, for the state did have the right to proceed.

In *Zerbst v. McPike,* 97 F.2d 253, 254 (5th Cir. 1938), it was held:

Under the inviolable rules of comity, which are reciprocal, the State having first arrested and imprisoned McPike could not without its consent be deprived of his custody until through with him. *Ableman v. Booth,* 21 How. 506, 16 L.Ed. 169; *Covell v. Heyman,* 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. But the State could "lend" the prisoner to the federal government in order to afford him a speedy trial and to convenience the witnesses who might be necessary to be assembled for or against him. This can be done without a complete surrender of the

prior jurisdiction over him which the State had acquired. This we think is fairly decided in the case of *Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879. There the prisoner was serving a federal sentence and was taken on habeas corpus to the State court to be tried for a State offense, the federal officer accompanying him and maintaining federal custody. Ponzi was evidently to be returned to his federal service after the trial. It was held that the procedure was lawful. The fact that Ponzi was originally in federal rather than State custody does not alter the principle, nor does the fact that he had been already convicted when "loaned" to the State distinguish that case from this. *The prior right acquired by first arrest continues unchanged until the arresting government has completed the exercise of· its powers,* and a waiver extends no further than it is intended to extend. Without the consent of the State authorities the United States Marshal could not lawfully take the person of McPike from the State officers, although McPike had been brought into the federal court and tried; and he did not attempt to. (Emphasis mine.)

The fact that the state prosecuting authorities utilized a writ of habeas corpus ad prosequendum to facilitate the appearance of petitioner in state court and that the petitioner's status as to exclusive custody was not adjudicated prior to state conviction does not alter his legal status which came into existence when he was arrested, charged, and admitted to bail by the state court.

It is obviously not in the interest of good state-federal relations for protracted litigation to occur prior to criminal trials in order to establish judicially which jurisdiction has the "right" to proceed first nor to establish judicially which jurisdiction has "exclusive custody" or jurisdiction over the prisoner. This is where principles of comity are usually adhered to in order to avoid unnecessary friction and to effect a prompt administration of justice by both sovereigns. But comity or convenience should not become the basis for making a convict's sentence thirty-one months longer than it would have been had the state kept the prisoner in the county jail or had the prisoner been at liberty on bond pending trial of the federal charge and appeared in state court in accordance with his state bond.

I think it important that we recognize that the alleged "exclusive custody" of the federal authorities was not premised on a prior conviction and sentence nor on a prior arrest and charge. At the time this petitioner appeared in state court, he owed the federal government no debt and, therefore, there is no important federal interest in exclusive custody being in the federal authorities.

What all this means is that the state is the jurisdiction that had exclusive legal custody of petitioner when he appeared in state court and the sheriff should have delivered him to the Missouri department of corrections without delay as required by statute. I realize the writ of habeas corpus ad prosequendum issued by the state court recited the petitioner would be returned to federal custody after state trial. But if the petitioner was, in law, in the exclusive jurisdiction of the state court, then that recital was also surplusage and could not be allowed to interfere with the circuit court's obligation and the sheriff's obligation to comply with section 546.610 and deliver him to the Missouri department of corrections.

Lest it be thought that this would impair the movement of persons as between sovereigns prior to trial or interfere with each sovereign's right to prosecute for the violation of its laws, it should be immediately noted that no such interference will result at all. Had petitioner been promptly delivered to the department of corrections, there is no question but what the Missouri department of corrections would have delivered him over to the federal authorities for federal prosecution.

Title 28 U.S.C.A. § 2241 grants power to the federal court to issue a writ of habeas corpus ad prosequendum to try a state prisoner on a federal charge. *McDonald v. Ciccone*, 409 F.2d 28 (8th Cir. 1969); *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961); *Crow v. United States*, 323 F.2d 888 (8th Cir. 1963).

And, as to exclusive jurisdiction to proceed, the United States Supreme Court in *Ponzi v. Fessenden*, 258 U.S. 254, at 260, 42 S.Ct. 309, at 310, 66 L.Ed. 607 (1922), in a habeas corpus matter, held:

> The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose.

*United States v. Croft, supra*, is practically identical with the instant case as of the time the first sentence—federal in that case—was imposed. The facts are important:

On April 2, 1969, Croft was arrested by a United States marshal on a federal charge. Croft was, on that same day, released on bond conditioned upon his appearance before the U. S. district court in Louisville on October 6, 1969. The case came before the federal court on the appearance date of October 6, 1969, but was passed to October 13, 1969, because Croft had been arrested on September 25, 1969, by state authorities on a state charge and was being confined in a county jail on the state charge. Because of Croft's arrest and detention by state authorities, it was necessary for the district court to issue a writ of habeas corpus ad prosequendum to bring him from the county jail to federal court and, on October 13, 1969, Croft was produced in federal court pursuant to the writ. Croft pleaded guilty and was sentenced to three years by the federal court and immediately committed to imprisonment. He was then returned to the county jail.

The court of appeals, in recapitulation, noted that: "On April 2, 1969, when appellant was arrested on the charge to which he later pleaded guilty in the federal court, he was not in state custody for any offense; and he was not in state custody when he was released on bond April 2, 1969, conditioned upon his appearance in federal court on October 6, 1969."

Before proceeding further, the analogy to our case should be noted. In early September 1968 when petitioner was arrested on the state charge to which he later pleaded guilty in state court, he was not in federal custody for any offense nor was he in federal custody for any offense when he was released on bond September 3, 1968, conditioned upon his appearance later in state court, nor at the time the formal charge—information—was filed on November 2, 1968.

The facts of the two cases are the same as to the time the two prisoners pleaded guilty and were sentenced by the jurisdiction which first charged and arrested them.

Returning to *Croft*. After he was sentenced in federal court on October 13, 1969, and returned to county jail, he was taken before the state court on November 13, 1969, and sentenced to two years each on two separate charges which were to run concurrently with each other and with the federal sentence.

However, instead of Croft being taken to the federal penitentiary, he was delivered to the state penitentiary. He served ten months and eight days and was then granted parole by state authorities but not released. The United States marshal took him into custody to begin service of his three-year-federal sentence. The court said at 1096: "If appellant had first been delivered by the Marshal to the federal prison, his state sentence would have been served before the conclusion of his federal sentence of three years. Since he was first delivered to the state prison by the Sheriff, his federal sentence of three years would commence

after his state sentence of two years. In the first case, his total imprisonment on both federal and state sentences would have totalled three years; in the second case, it would total five years."

In our case, had petitioner been first delivered by the sheriff under the circuit court's commitment and section 546.610 to the department of corrections, his state sentence of twenty-five years would have begun. Since he was not delivered there, the state here argues his sentence did not begin. The difference is a sentence of twenty-five years as compared with a sentence of twenty-seven years seven months.

I find it impossible to adequately synopsize *Croft* and therefore quote at length from that opinion, 450 F.2d 1097–98–99:

■ The general rule applicable to this case is that where a court has issued the mittimus and has given authority to the proper officer to enforce it, and such officer refuses to act on it, and turns the prisoner over to another jurisdiction, the court, after the period specified in the mittimus has expired, will refuse to find that the prisoner has not served his sentence, but will assume that he has served it, and will, in consequence, refuse authority for his further imprisonment. 24 C.J.S. Criminal Law § 1610.

In the case of *In re Jennings,* D.C., 118 F. 479, a defendant had been sentenced, and a warrant of commitment had issued, the command of which was that the marshal should take charge of the prisoner, who was to be kept in the United States prison at Ft. Leavenworth. In disregard of his duty and the command of the writ, the marshal, of his own accord and utterly without any authority so to do, turned the custody of the defendant over to another jurisdiction. The defendant was taken into that jurisdiction, convicted and sentenced, and committed to serve out the term of his imprisonment. Subsequently, and after the expiration of the term of his original sentence and that mentioned in the warrant of commitment, he was again taken into custody by the marshal, to whose custody he had been committed, who undertook to hold him for a further term of imprisonment measured by the original sentence. The defendant sued out a writ of habeas corpus. The return showed that the only authority for the deprivation of his liberty was a warrant of commitment, the authority of which had already expired by its own terms. On the face of the pleadings, therefore, there was absolutely no authority for the retention of the prisoner, and he was, in consequence, discharged.

The court, in discharging the prisoner, said: "It matters not that during a portion of the time during which he has been confined he has been held ostensibly for an offense other than that for which he was originally convicted. In the eye of the law, he has all the time been serving out the sentence that was imposed on him * * * because no ministerial officer, by disobeying the mandate of the court, and unlawfully surrendering him into another custody than that where he rightfully belonged, could suspend the running of the sentence for that offense."

In the leading case of *Smith v. Swope,* 91 F.2d 260 (C.C.A.9), which embodies the rule determinative of this case, it was held that where the United States marshal, who had custody of a sentenced prisoner, was ordered to deliver him to prison but held, or allowed the prisoner to be held, in the county jail, and afterward permitted his surrender to state authorities, the prisoner's service of sentence was deemed to begin at the time of commitment and custody thereunder, rather than at the date of actual commitment after the prisoner's parole by state authorities.

The commitment order, under the sentence of the federal court, was to take and safely deliver the defendant into the custody of the keeper or warden or other officer in charge of the United States penitentiary. In passing on the question, the court said that the commitment order "to keep" the prisoner meant to keep him in the Los Angeles jail until time to take him to the

train for the federal penitentiary. As the court said, "We cannot shut our eyes to the fact that there must have been an interval of time when the commitment order necessarily required him to be 'kept' where the marshal then held him. * * * The reason for this, as appears from the warden's pleading in the present case, was that on May 14, 1930, an information charging forgery had been filed against appellant in the municipal court of the state of California. On June 19, 1930 (after he had been sentenced and committed by the United States District Court), he pleaded not guilty to this charge. On July 31, 1930, he changed his plea to one of guilty and was sentenced to a term of from one to fourteen years in the California State Prison." Having been released by the United States Marshal to the custody of the officers of the state, the appellant served time in the state prisons until June 16, 1935, at which time he was released on parole and was given over to the custody of the United States Marshal, who incarcerated him in the federal penitentiary, where he still remained, serving his time under the federal sentence.

In deciding the case, Judge Denman, speaking for the court, said:

"The record in this case shows a sentence of the United States District Court and a commitment issued pursuant thereto commanding the marshal, then having custody of the prisoner, to deliver the defendant to prison 'forthwith.' It is not contested that the court had jurisdiction to pronounce the sentence and issue the order of commitment. Such jurisdiction is not defeated by a mere showing that at a previous time there was jurisdiction over the prisoner in the municipal court of the state of California and with no evidence of a limitation on the federal jurisdiction at the time of the issuance of the commitment."

It was argued by the Government in the *Swope* case that appellant was first under the jurisdiction of the state court by reason of the forgery information which was filed against him there prior to the lodging of the federal indictments, and that the state of California was entitled to have its sentence upon the prisoner executed before he could begin to serve the terms imposed by the federal court.

"Whether this is true as an abstract proposition," the Court of Appeals said, "we have no occasion to decide. Whether the state might have surrendered and the United States accepted jurisdiction over the prisoner for a limited period or purpose and whether, under proper orders of the court, the prisoner's state and federal sentences might be staggered, interwoven, or served piecemeal, are questions not presented by the record in this case. Certainly the two sovereigns could not be bound to such an agreement by the actions of mere subordinate administrative officials such as the state sheriff and federal marshal."

It is of interest to note that a dissenting opinion in the *Swope* case (*supra*) was based on the same interpretation of the statute upon which the Government here relies, that the sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary. However, in the instant case, the failure of the Marshal to execute the commitment at the time of its issuance, or after the appellant had subsequently been sentenced on state charges, did not postpone the beginning of the sentence, since appellant was safely returned by the Marshal and confined in the county jail immediately after the federal sentence, and was thereafter held there pending appellant's trial and sentence on the state court charges.

■ After sentencing by a federal court, a prisoner may be held, by stay, for trial in a state court, without the federal court's losing jurisdiction of him, *although he is entitled to have the time of the stay counted as part of his term of imprisonment. Ex parte Sichofsky, D.C., 273 F. 694; Sichofsky v. United States, 277 F. 762 (C.C.A.9).*

■ When appellant Croft was released on bail, he was still considered as being in

the custody of the federal Government; the bail did not divest the federal court of its inherent power to deal with the accused, since he was still constructively in the custody of the law. *Taylor v. Taintor*, 16 Wall. 366, 21 L.Ed. 287; *Field v. United States*, 193 F.2d 86 (C.A.2); *United States v. Schneiderman, et al.,* 102 F.Supp. 52 (D.C. Cal.), reversed on other grounds, *Stack v. United States*, 193 F.2d 875 (C.A.9). See 8 C.J.S. Bail § 31, p. 60.

■ The determination whether a federal court or a state court has prior jurisdiction over the person of an accused rests upon principles of comity between federal and state courts. *Wall v. Hudspeth*, 108 F.2d 865, 866 (C.A.10). Here, there is no dispute over comity. The state court recognized prior jurisdiction of the federal court over the person of appellant Croft, and emphasized such recognition of prior jurisdiction of the federal court by making the state's sentence run concurrently with the federal sentence.

■ *Smith v. Swope*, 91 F.2d 260 (C.C. A.9), is the authority that guides determination in this case. Appellant, upon the order of commitment of the District Court, should have been delivered by the Marshal to a federal penitentiary after the subsequent trial and sentence by the state court which provided that its sentence should run concurrently with the federal sentence. The fact that appellant was erroneously taken from the county jail by the Sheriff and delivered by him to the state prison does not affect the running of the time of the federal sentence from the day that the order of commitment was issued to the Marshal. Appellant is entitled to credit on his federal sentence for the time he was held in the county jail after the federal court's order of commitment, and for the time he served because of his erroneous delivery by the Sheriff to the state prison. Accordingly, the term of appellant's sentence runs from the date of the order of commitment to the Marshal. As said in *Ex parte Sichofsky, supra,* "An order will be entered, therefore, recalling the commit-

ment and decreeing its amendment, to the effect that the term of imprisonment heretofore adjudged upon petitioner will begin to run as from the date of pronouncement of the aforementioned judgment herein."

In accordance with the foregoing, the case is remanded to the District Court with directions to correct appellant's sentence to the effect that it run for a period of three years commencing as of October 13, 1969, the date of the original commitment to the Marshal.

A situation similar to *Croft* occurred in *Gillman v. Saxby, Atty. Gen.,* 392 F.Supp. 1070 (U.S.D.C.Haw.1975). In *Gillman* petitioner pled guilty in federal court on October 1, 1973, posted bond, and was released pending sentencing. Thereafter, Gillman was arrested in New York by state authorities and later a writ of habeas corpus ad prosequendum issued from the federal court, wherein Gillman had pled guilty, to have him returned there for sentencing. On December 17, 1973, Gillman was sentenced by that federal court to imprisonment for six years, "mittimus forthwith". He then was returned to New York where he pleaded guilty in state court and was sentenced to from five to ten years imprisonment. The state court ordered the state sentence served concurrently with the federal sentence.

Notwithstanding, the prisoner Gillman was *not* taken into federal custody to begin his federal sentence but instead was given over to the New York department of corrections to begin his state sentence. The petitioner sought to clarify his status and to that end sought relief in the federal sentencing court.

The court of appeals held at 1072:

It seems obvious that if petitioner had been incarcerated in federal prison after being sentenced in New York, both sentences would now be running concurrently as ordered by the state judge. Further, it is clear that the District Court judge was fully aware of the pending

state charges when he ordered mittimus forthwith. While the judge could not order the sentence to run concurrently with the state sentence since no state sentence had then been imposed, his intent was clear. This court fails to understand why the state and federal officials involved failed to comply with the clear orders of both judges.

And at 1072–73:

In addition, the reasoning of the court in *Zerbst v. McPike*, 97 F.2d 253 (5th Cir. 1938), cited by respondents, supports the conclusion that the court had such authority. The court in the *Zerbst* case concluded that the petitioner was not entitled to the credit in question. The court first pointed out that "no time [had been] fixed for the commencement of the sentence." It then reasoned that the government first arresting an individual gains prior jurisdiction over him. Since the state was the first arresting government in that case, no credit was due on his federal sentence when the prisoner was ordered to serve his state sentence before commencing his federal sentence. Here, of course, the federal government was not only the first arresting government, but also the first to find petitioner guilty and sentence him. Thus, under the reasoning of one of the cases upon which respondents rely, it is clear that the federal judge had the authority to impose the sentence as he did given the prior arrest and guilty plea.

The court then ordered that the petitioner's federal sentence began to run at the time he was sentenced by the federal court.

The only difference between the instant case and *Croft* is that in the instant case the petitioner was not convicted by the second jurisdiction—the federal court—and therefore it is not a question as to *which* sentence the petitioner would be entitled to credit for the thirty-one months,—but a question as to whether the thirty-one months should be allowed on the singular sentence. In *Croft* and *Gillman* the time was allowed on the *first* sentence because the court first sentencing the respective defendants was of the same jurisdiction (sovereignty) that first arrested and charged, and that is the criteria upon which it was determined that the federal court had exclusive jurisdiction to complete its process. The same is true in the instant case. Missouri authorities, after arresting, charging, and placing petitioner on bond could have dismissed the charges and handed petitioner over to the federal authorities, but Missouri didn't do that. It made no difference to the Missouri court whether petitioner continued to be at liberty on the state bond or was housed—confined—in the federal institution at Springfield pending state trial, so long as petitioner appeared for trial in state court which he did. Additionally, the state sentence in the instant case is also the *first* sentence, for it is the only sentence.

To hold that Missouri lost the exclusive jurisdiction to proceed simply because the federal authorities arrested the defendant would be to say that the state loses its right to proceed merely because another jurisdiction arrested him. That would certainly leave the right to proceed in a continuous precarious state.

In considering the relevancy of *Croft* and *Gillman* to the instant case, it should be noted that the sentencing federal court was not free to declare when a sentence commences, in the ordinary sense, any more than a state court is free to do so.

Title 18 U.S.C.A. § 3568 provides:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term "offense" means any criminal offense, other than

an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

No sentence shall prescribe any other method of computing the term.

Section 3568 of title 18 did not prevent the federal courts from declaring that a particular sentence regularly imposed by a federal court began when imposed. It would seem that the prohibition against a court prescribing, in its sentence, that the term shall commence on some date or at some time other than that which section 3568 requires is really a prohibition against a court declaring, *in its order, judgment, or sentence*, that the sentence shall commence as of a certain time. That is, I think, basically what the Missouri case law on the same matter prohibits. I do not believe, however, that the Missouri decisions prevent a court from considering the facts of a given case, as they happened, and where warranted by general law declaring that the prisoner's sentence "commenced" when sentenced or accomplishing the same result by declaring that he is entitled to credit against his sentence for the time in confinement that elapsed between sentencing and delivery to the penitentiary.

That is what the federal courts in *Croft* and *Gillman* did and they did it upon the determination that the prisoner was first arrested and charged by the federal court and those acts resulted in the federal court having the exclusive legal custody or jurisdiction to proceed and complete its criminal process. *Gillman* did not enunciate new concepts but relied upon legal principles earlier established in *Smith v. Swope, supra*, and *Zerbst v. McPike, supra*, which

in turn apply principles set forth in *Ponzi v. Fessenden, supra.*

*Jackson v. Kaiser*, 353 Mo. 919, 185 S.W.2d 784 (banc 1945), is the case principally relied upon in the principal opinion. In my opinion, *Jackson v. Kaiser* does not support the result reached in the principal opinion but rather supports the granting of credit in this case. Again, the facts are important.

On September 6, 1939, a complaint was filed in the St. Louis Court of Criminal Corrections charging robbery. In January 1941 Jackson was arrested by federal authorities on the *federal charge* of fleeing Missouri to avoid prosecution, and federal indictment was filed against him. In June 1941 an information charging him with robbery (state offense) was filed in the circuit court of St. Louis. From the time of Jackson's arrest (federal arrest), he was in the custody of the United States marshal who lodged him in the city jail at St. Louis. On November 13, 1941, the U.S. marshal produced petitioner in state circuit court pursuant to a writ of habeas corpus ad prosequendum for trial. He was convicted and, on December 5, 1941, was sentenced to imprisonment in the state penitentiary for five years. On December 6, 1941, petitioner was brought before the U.S. district court where he pled guilty to the indictment mentioned supra charging him with violation of the Fugitive Felon Act and was sentenced to three years imprisonment at Fort Leavenworth, Kansas. He served that sentence as of February 1944 and on February 16, 1944, was delivered to the Missouri penitentiary to serve the state sentence. He then petitioned for writ of habeas corpus contending that when the U.S. marshal chose to honor the Missouri circuit court's writ of habeas corpus ad prosequendum, the state court acquired full and exclusive jurisdiction over him and therefore his sentence began when imposed.

This claim was denied by this court on the rule enunciated in *Ponzi v. Fessenden, supra*, appearing at p. 786 of 185 S.W.2d of *Jackson v. Kaiser, supra*:

"The chief rule which preserves our two systems of courts from the actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." *Ponzi v. Fessenden*, 258 U.S. 254, loc. cit. 260, 42 S.Ct. 309, loc. cit, 310, 66 L.Ed. 607, 22 A.L.R. 879. See *Cato v. Smith*, 9 Cir., 104 F.2d 885; *Zerbst v. McPike*, 5 Cir., 97 F.2d 253.

The fact that gave the U.S. court the exclusive right to proceed to the exhaustion of its remedy was the fact that Jackson had been first arrested and taken into custody by the U.S. authorities pursuant to a federal charge. That is what *Ponzi v. Fessenden, supra*, holds 258 U.S. at loc. cit. 261, 42 S.Ct. at loc. cit. 311, when the United States Supreme Court said: "In the case at bar, the federal District Court first took custody of Ponzi."

In *Jackson v. Kaiser, supra*, it was the U.S. authorities which first took custody of Jackson. They did that when they arrested Jackson in New York on the charge pending against him in the U.S. district court in Missouri.

In our case, the state authorities, like the federal authorities in *Jackson, supra*, and *Ponzi, supra*, first took petitioner into state custody on a state charge in September 1968. The state court assumed control either then or when it admitted him to bail pending trial on September 4, 1968. See *United States v. Croft, supra*, and *Gillman v. Saxby, supra*.

So, for the same precise reason that this court held Jackson to have been subject to the federal authorities first exhausting federal criminal processes over him, this court should hold that the state in the instant case had the right to proceed to exhaust its criminal processes over petitioner. That is why *Jackson v. Kaiser, supra*, does not support the denial of credit for the thirty-one

months and does support—mandate—that it be allowed. The two cases, in my opinion, that make this explicitly clear are *United States v. Croft, supra*, and *Gillman v. Saxby, supra*.

None of these cases cause any interference with the state or federal authorities trying a prisoner for the violation of their respective laws. The prisoner, under all of the cases, has no right to demand as between two sovereigns which will try him first nor to prevent either sovereign from permitting the other to try him for a criminal offense either before or after his is convicted by one jurisdiction.

It is plain that when the courts arrive at a conclusion that a person is in "exclusive custody", they mean something more than that the prisoner is handcuffed to a federal marshal or a county sheriff at a particular point in time, or that he has been kept by one authority or the other for some period of time. It means what *Ponzi, supra*, says it means. That is, that the court which first takes the person into its control is permitted to exhaust its remedy before the other court shall attempt to take him for its purpose.

The court that first took petitioner into its control was the state circuit court. It continued to exercise control and the prosecution for the state offense proceeded in due course. I repeat, there is no authority anywhere that holds that a subsequent arrest (here the federal arrest) and detention by that authority divests the first court of its right to proceed to conclusion as enunciated in *Ponzi, Jackson, Zerbst, Smith, Croft*, and *Gillman, supra*.

*Johnson v. Haynes*, 504 S.W. 308 (Mo. App.1973), cited in the principal opinion, does not support the denial of credit in this case. The time for which Johnson sought credit was not time in confinement but was time when he was free on bond. 504 S.W.2d at 311. There were no issues as to whether or not the state had the right to proceed to the exhaustion of its processes as there was no other jurisdiction involved at

all. The petitioner Johnson argued his "sentence began" on December 12, 1969, when he was sentenced because the sentence so recited. The court simply held that the recital in the court's order did not control, but the law controlled as to when sentence began. In that context, the court held the department of corrections could ignore the *recital in the judgment* and begin the sentence when the prisoner is received. That is obviously correct. To hold otherwise would be to give Johnson credit against his sentence for the time he was free on bond pending appeal and I know of no jurisdiction that allows that.

What the principal opinion does, in my opinion, is to let the question of whether or not the court first assuming control of a prisoner can proceed to the exhaustion of its process depend upon whether some other law enforcement officer (marshal, sheriff, or policeman) happens to arrest the man in the meantime. No federal court "loaned" petitioner to Missouri. Petitioner was not in federal custody under any sentence. The federal marshal did not have anyone to "loan"—the Missouri authorities had the legal custody of petitioner from the outset and, under the authorities noted supra, had the exclusive control and right to proceed to the exhaustion of its criminal processes and remedies.

In *Croft* the court said at 1098:

> After sentencing by a federal court, a prisoner may be held, by stay, for trial in a state court, without the federal court's losing jurisdiction of him, *although he is entitled to have the time of the stay counted as part of his term of imprisonment* . . .

In my opinion, the same result is required in the instant case. Missouri was entitled to proceed against petitioner without interference by a federal marshal; Missouri did proceed to convict and sentence petitioner. He has been in confinement ever since then. It may have been convenient to the federal authorities and to the state to merely place him in custody of the federal marshal with-

out a Missouri detainer instead of delivering him to the Missouri penitentiary. That convenience cannot, in my opinion, form any legal basis for denying him credit for the time he was imprisoned by the federal marshal after the Missouri conviction with the apparent consent of some Missouri authorities.

The second reason why he is entitled to this credit is because a denial of credit in this case deprives him of equal protection of the law. Had he been arrested by federal authorities, as he was, and released on bond, and appeared of his own accord in state court on his state bond, there could hardly be a contention made that he was in "exclusive custody" of the federal government, and his sentence would have begun to run when he was sentenced. Had he not been released on bond by state authorities but subsequently charged in federal court and a federal detainer lodged against him and thereafter the county sheriff produced him in state court, there could be no contention made that he was in "exclusive custody" of the federal authorities, and his sentence would have begun for all practical purposes when he was sentenced. Had petitioner, after being sentenced on March 28, 1969, been delivered to the department of corrections in accordance with the court's commitment order and section 546.610, his time would have begun to run when sentenced and would have continued to run even though the federal authorities obtained custody of him by a writ of habeas corpus ad prosequendum and regardless of whether he was convicted or acquitted in federal court or the federal prosecution was voluntarily dismissed.

In this case, however, the petitioner is denied credit for thirty-one months simply because a few weeks before his state court trial he was arrested and was still being detained by federal authorities. That is a distinction without a difference and, in my opinion, does not authorize this court to treat him differently than the law would treat one who had (1) not been arrested by the federal authorities, or (2) who was ar-

rested but admitted to federal bail, or (3) who had not been admitted to state bail and remained in the physical custody of the county sheriff even though charged by federal indictment with some federal offense and who was, therefore, subject to a federal detainer.

The third reason why petitioner is entitled to the thirty-one months credit is because, in my opinion, it is authorized in this case by section 546.615 as it existed on March 28, 1969, the date of the instant sentence. It provided: "1. When a person has been convicted of a criminal offense in this state (1) The time spent by him in prison or jail subsequent to the date of his sentence and prior to his delivery to the state department of corrections shall be calculated as a part of the sentence imposed upon him; . . .."

This statute was amended in 1971 but, insofar as time served after sentencing and before transfer to the department of corrections is concerned, it continued to require that time be credited against the sentence previously imposed.

It is noted that section 546.615 does not address itself to the question of when a sentence commences. It simply mandates that if certain criteria are met then the convicted person receives credit on the sentence. It requires that the person be convicted of a criminal offense. Petitioner was convicted in a circuit court of this state of a criminal offense. It requires that the time for which credit is sought be spent by him in a "prison or jail". Petitioner spent thirty-one months after conviction and sentence in a "prison". The United States Medical Center at Springfield, Missouri, is a prison. *Van Sirrs v. Ciccone*, 437 F.2d 884 (8th Cir. 1971). This thirty-one months was spent in prison "subsequent to the date of his [Missouri] sentence and prior to his delivery to the state department of corrections".

All of the criteria of section 546.615, subd. 1(1) having been met, it is mandatory that the thirty-one months "be calculated as a part of the term of the sentence imposed upon him".

If it be required that the credit under 546.615 be only for time in confinement in consequence of the sentence, then that is also satisfied here. Petitioner was admitted to bail on the state charge. Thereafter he was arrested on the federal charge. He testified he made no effort to be admitted to bail on the federal charge after being sentenced in state court because he understood that the time he was serving in federal custody after being sentenced in state court counted against his state sentence. But whether he would or would not have been able to meet bail requirements in federal court, the fact remains that he could not have been given his liberty pending trial in federal court because he was then under sentence by the state court and a state detainer had been lodged against him. Consequently, it is clear that regardless of what the federal authorities chose to do, it was the state sentence and judgment that absolutely prevented him from being released from confinement.

Had petitioner been admitted to bail by the federal court, he would have immediately been taken to the Missouri department of corrections on the state sentence pursuant to the detainer.

In *Brown v. United States*, 489 F.2d 1036 (8th Cir. 1974), appellant Brown had been arrested on May 5, 1972, by state authorities on a charge of armed robbery. On May 8, 1972, a federal detainer was lodged against Brown for parole violation. On June 15, 1972, the state charge was dismissed and Brown was returned to federal custody. Between May 5 and June 15, Brown was in continuous state custody unable to secure his release on bail. Brown sought to have the time spent in state custody credited against his federal sentence on the theory that the federal detainer prevented him from making bail on the state charge. Title 18 U.S.C.A. § 3568 requires that a person be given credit against a federal sentence for any time spent in custody in connection with the offense or acts

for which the federal sentence was imposed. The court of appeals, citing *Davis v. Attorney General*, 425 F.2d 238, 240 (5th Cir. 1970), held that Brown was entitled to credit for time in state custody because he could not obtain release on bail by state authorities because of the outstanding federal detainer.

In the instant case, petitioner could not obtain release after state conviction from federal authorities because of the outstanding state detainer against him which detainer was based upon a valid state conviction and sentence, and the federal detention was *not* pursuant to a federal sentence.

The principal opinion asks the question: Are they (the provisions of section 546.615) applicable to confinement other than when the subject is a state prisoner and states that, "Surely the General Assembly was not so presumptuous as to include courts other than those of Missouri."

As to the question posed, this petitioner was, during his confinement at the federal prison in Springfield, Missouri, a state prisoner and, as shown, the state sentence was the reason that he could not be released to be at liberty on federal bail. This is not *prior* confinement—confinement prior to sentence—it was confinement *subsequent* to sentence and, in my opinion, pursuant to that state sentence. In *Brown, supra*, it was the federal detainer that prevented Brown from securing release on state bail while in a state jail and, therefore, Brown was entitled to credit for that time on his federal sentence.

Here, it was the state sentence that prevented petitioner from obtaining his release on federal bail subsequent to his state sentence and prior to dismissal of the federal charge, so he is entitled to credit for the time in federal jail during which he could not be released on federal bail due to the state sentence.

The tenor of the principal opinion seems to evidence some doubt as to whether the provisions of 546.615 authorize credit for the thirty-one-month period.

*Anthony v. Kaiser*, 350 Mo. 748, 169 S.W.2d 47, 48 (banc 1943) holds:

Penal and criminal statutes, such as the one before us "are generally 'construed strictly as to those portions which are against defendants, but liberally construed in those which are in their favor— that is, for their ease and exemption. No person is to be made subject to such statutes by implication, and, when doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused.'" *State v. Taylor*, 345 Mo. 325, 133 S.W.2d 336, 341.

Applying the principles of *Anthony v. Kaiser, supra*, to this case, any doubt must be resolved in favor of the prisoner. When it is approached in that manner, then the result is that the petitioner receives credit for the time claimed.

For all of the foregoing reasons, I dissent and believe that the holding in the principal opinion that denies the right to the state of Missouri to complete its criminal process after first arresting and charging petitioner simply because he was subsequently arrested and detained by federal authorities is devastating to the maintenance of our system of dual sovereigns, federal and state, and is contrary to all precedents in that it makes possession (subsequent arrest and detention) paramount to first-acquired jurisdiction and the rights of sovereignty incident thereto.

In short, when Missouri, pursuant to comity, allowed the federal authorities to keep petitioner at the federal medical center in Springfield instead of revoking his appearance bond prior to state trial and requiring him to be returned to the county jail to await state trial in accordance with Missouri's first-acquired right to prosecute and imprison, if convicted, Missouri, under the principal opinion, was divested of its paramount right to exhaust its remedies. Therefore, an act done pursuant to comity is held to destroy the *right* to proceed in Missouri when it is the very existence of

that *right* to proceed that is the traditional reason and basis for the rule of comity.

I dissent.